1  PETER C. MEIER (SB# 179019) petermeier@paulhastings.com
   ERIC A. LONG (SB# 244147) ericlong@paulhastings.com
2  KATHARINE CHAO (SB# 247571) katharinechao@paulhastings.com
   SARAH O. CHANG (SB# 257921) sarahchang@paulhastings.com
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   55 Second Street
4  Twenty-Fourth Floor
   San Francisco, CA  94105-3441
5  Telephone:  (415) 856-7000
   Facsimile:  (415) 856-7100
6
   MICHAEL T. RISHER (SB# 191627) mrisher@aclunc.org
7  AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
      NORTHERN CALIFORNIA, INC.
8  39 Drumm Street
   San Francisco, CA 94111
9  Telephone: (415) 621-2493
   Facsimile: (415) 255-8437
10
   Attorneys for Plaintiffs
11 ELIZABETH AIDA HASKELL and REGINALD ENTO,
   on behalf of themselves and others similarly situated

12

13

14                UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

17 ELIZABETH AIDA HASKELL and          Civil Case No.     4779
   REGINALD ENTO, on behalf of
18 themselves and others similarly situated,   **COMPLAINT FOR DECLARATORY AND
                                                INJUNCTIVE RELIEF**
19            Plaintiffs,

20       vs.                                    **CLASS ACTION**

21 EDMUND G. BROWN, JR., Attorney
   General of California; EVA
22 STEINBERGER, Assistant Bureau Chief
   for DNA Programs, California Department
23 of Justice; and MICHAEL HENNESSEY,
   Sheriff, San Francisco County,
24
              Defendants.
25

26

27

28

Plaintiffs, for their Complaint in this action, allege and aver as follows:

**INTRODUCTION**

1.      This is a facial challenge to a California statute that requires people who are arrested for any felony to provide DNA samples to be analyzed and included in a criminal database, without a warrant or any judicial oversight.  Plaintiffs Elizabeth ("Lily") Aida Haskell and Reginald Ento request declaratory and injunctive relief on behalf of themselves and others similarly situated on the grounds that this law, California Penal Code § 296(a)(2)(C), violates their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2.      As of January 1, 2009, California law mandates the compulsory extraction, collection, analysis, storage, and dissemination for expressly law enforcement purposes of the DNA of "any adult person arrested or charged with any felony offense."  Cal. Penal Code § 296(a)(2)(C) (hereinafter "§ 296(a)(2)(C)").[1]  This will result in the mandatory DNA sampling from hundreds of thousands of individuals in California who have not been, and in many cases never will be, convicted of any crime, and without any judicial oversight because collection occurs "immediately after arrest."  § 296.1(a)(1)(A).

3.      This law, enacted in 2004 as part of Proposition 69, dramatically expanded the scope of mandatory, suspicionless, and warrantless seizure and testing of DNA in California. As a result, California now has the largest criminal DNA databank of any of the 50 states, and one of the most expansive programs for the compulsory collection, retention, and sharing of DNA data in existence *anywhere*.  Indeed, California law enforcement officials have described California's program as "[t]he third largest DNA database in the world."

4.      Under this statutory scheme, not only is an arrestee's body tissue seized for the purpose of constructing the arrestee's DNA profile – part of an individual's genetic blueprint – but the State also stores the arrestee's body tissue forever so that it can conduct additional DNA analysis of it in the future.  Although persons who are not ultimately convicted may apply for a court order to have their biological samples destroyed and their DNA profiles expunged from the database, the procedures for trying to obtain this relief are inadequate.  First, the procedures do

---

[1] All statutory references are to the California Penal Code unless otherwise indicated.

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1  not allow for timely relief. People, like the Plaintiffs in this case, who were arrested but not

2  charged must wait until the statute of limitations has run before they can even apply for

3  expungement. § 299(b)(1). This means a delay of at least three years and, in some cases, much

4  longer. §§ 799-801. Then, after they have requested relief, innocent arrestees will face an

5  additional delay of at least six months before the court can authorize expungement.

6  § 299(c)(2)(D). Even then, any expungement petition is subject to additional procedural barriers,

7  including a right of veto by the prosecuting attorney. Finally, the court has the unreviewable

8  discretion to deny such relief even to persons who have been found to be factually innocent of the

9  crime for which they were arrested. § 299(b), (c).

10          5.      Section 296(a)(2)(C) mandates the seizure of and broad publication to

11  local, state, and national law enforcement agencies of DNA profiles from large numbers of

12  persons as to whom the state has no more legitimate interest in such information than it has for

13  any other law-abiding member of the public. The compulsory testing requirement applies to

14  persons arrested – but not even charged, much less convicted – of many offenses for which their

15  DNA has no conceivable relevance, such as the use of unauthorized signatures in a campaign

16  advertisement, writing checks with insufficient funds, accepting a bribe to throw a sporting event,

17  racing a horse under a fictitious name, counterfeiting railroad tickets, or simple possession of a

18  controlled substance, including such minor ones as codeine. *See* Cal. Penal Code §§ 115.1, 337c,

19  337f, 476(c), 481; Cal. Health & Safety Code § 11350. Others subject to compulsory extraction

20  of their DNA pursuant to § 296(a)(2)(C) include:

21          •       persons who are arrested but never charged with a felony;

22          •       persons who are arrested and charged with a felony, but whose charges are

23                  quickly dropped in the recognition that they are innocent;

24          •       persons who are arrested for a felony and are acquitted at trial and

25                  determined by the court to be factually innocent of the crime under Penal

26                  Code § 851.8(e);

27          •       persons who are arrested as a result of mistaken identity, including victims

28                  of identity theft;

Case No.

-2-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

- persons, such as victims of domestic violence, who are arrested for
violence committed in self-defense and who either have the charges against
them dropped or are subsequently acquitted;

- participants in political demonstrations and other activities who have
committed no crime but are nonetheless arrested in connection with broad
sweeps of participants by the police;

- persons who are wrongfully arrested due to police misconduct;

- persons who are arrested for cultivation of marijuana but against whom
charges are dropped or dismissed upon a showing that they were in lawful
possession of the marijuana for medical purposes;

- persons who have been arrested for drug possession, complete a pretrial
diversion program pursuant to § 1000 *et seq.*, and thereafter have their
charges dismissed;

- persons who have been arrested for felony drug offenses and who,
following successful completion of treatment programs, have had their
convictions expunged in compliance with Proposition 36 or other state
laws; and

- persons who are arrested for minor offenses that can be, but rarely are,
charged as felonies, even when they are ultimately charged with nothing
more than misdemeanors pursuant to § 17(b) (California's so-called
"wobbler" statute). This can include, for example, offenses such as
second-time shoplifting, or even entering a store with the intent to shoplift
with no prior criminal history.

6. Overall, approximately one-third of the hundreds of thousands of persons arrested for felony offenses in California in any given year are ultimately never convicted of any crime. Many others are convicted of nothing more than a misdemeanor. According to the California Department of Justice, of the approximately 332,000 people arrested for felonies in California in 2007, more than 101,000 were not convicted of any crime. Another

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1   approximately 13,500 of these arrestees received only a fine or jail time without probation,

2   indicating that they were convicted only of misdemeanors.  The statistics for the previous several

3   years are similar – since 1998, the number of persons arrested by California authorities on

4   suspicion of a felony has ranged from a low of 267,512 in 2000 to a high of 345,415 in 2004.

5   There is no reason to think that these numbers will drop below this range over the next several

6   years.

7          7.   The expansive mandatory DNA testing established by § 296(a)(2)(C)

8   violates the Fourth and Fourteenth Amendments of the United States Constitution.  The statute

9   not only permits, but *requires,* broad and ongoing violations of the fundamental protections

10   afforded all persons by the United States Constitution to be secure in their persons from

11   unreasonable searches and seizures and to due process of law.  Ignoring the clear limitations

12   recognized by the courts in upholding carefully-circumscribed DNA testing programs for persons

13   *convicted* of felony offenses, § 296(a)(2)(C) reaches broadly to mandate testing of hundreds of

14   thousands of people who are legally presumed innocent (and in a large proportion of cases

15   actually are innocent) of any crime at all.  No justification has been identified for this program

16   beyond the generalized law enforcement interest in solving crimes other than the one for which

17   the individual was arrested.  But the United States Constitution permits this kind of law

18   enforcement interest to be pursued only in the presence of reasonable individualized suspicion

19   and (absent unusual circumstances) issuance of a warrant on probable cause.  § 296(a)(2)(C) is

20   accordingly unconstitutional.

21          8.   This action is brought on behalf of persons who are required to provide a

22   DNA sample pursuant to § 296(a)(2)(C) solely as a result of being arrested for a felony.  Plaintiffs

23   do not challenge the other provisions of Cal. Penal Code §§ 295 *et seq.*, which require

24   compulsory DNA testing for persons who are actually convicted of a criminal offense.  Nor do

25   Plaintiffs challenge the lawful collection and analysis of DNA samples pursuant to a valid

26   warrant or other sufficient court order requiring DNA testing in connection with a specific

27   criminal investigation or proceeding as to which the requisite probable cause is shown connecting

28   the person to be tested with a particular criminal offense.  Rather, Plaintiffs challenge the mass,

-4-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

programmatic DNA testing of hundreds of thousands of persons – persons not convicted or who are otherwise not under supervision of the criminal justice system – as to whom the long-recognized Constitutional prerequisites to such searches and seizures have been established.

## JURISDICTION AND VENUE

9.      This action arises under 42 U.S.C. § 1983 and the United States Constitution.  This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

10.      The Defendants are all public officials of the State of California or its political subdivisions.  Each of the Defendants resides within this District and/or performs official duties within the State of California.  This Court, accordingly, has personal jurisdiction over each of the Defendants.

11.      Venue properly lies within this District under 28 U.S.C. § 1391(b).  One or more of the named Defendants perform their official duties in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims have occurred or will occur in this District.

## INTRADISTRICT ASSIGNMENT

12.      Pursuant to Local Rule 3-2, this action may properly be assigned to the San Francisco or Oakland divisions of this Court.

## THE PARTIES

### Plaintiffs

13.      Plaintiff Elizabeth ("Lily") Aida Haskell is an individual residing in Oakland, California.  On March 21, 2009, Ms. Haskell was arrested at a peace rally against the War on Iraq in San Francisco's Civic Center.  Ms. Haskell was arrested under Cal. Penal Code § 405a (taking a person from police custody, a felony under § 405b) and § 148 (obstructing or delaying a peace officer, a misdemeanor) when she allegedly tried to free another protestor who had been taken into custody.  After arrest, Ms. Haskell was taken to a San Francisco jail, where San Francisco Sheriff's Department personnel demanded a DNA sample.  Two sheriff's deputies told Ms. Haskell that she would be charged with a separate misdemeanor if she did not provide a DNA sample by swabbing the inside of her cheek.  Ms. Haskell asked about access to a lawyer

1    before providing the sample. One of the deputies told Ms. Haskell that she could talk to a lawyer

2    but that she would still be charged with a separate misdemeanor for not immediately providing a

3    DNA sample. She was also told that she would not be released from jail until after arraignment if

4    she did not provide a DNA sample on the spot and without advice from a lawyer.

5           14.    No charges were ever filed against Ms. Haskell based on this arrest. No

6    law enforcement entity or personnel obtained any sort of warrant to take her DNA.

7           15.    On information and belief, Defendants have analyzed or will soon analyze

8    Ms. Haskell's DNA sample, and her DNA profile has been, or shortly will be, uploaded into

9    CODIS. On information and belief, there is no other legal basis for the seizure, analysis, or

10   retention of Ms. Haskell's DNA sample other than her arrest under Penal Code § 405a by the San

11   Francisco County police as alleged herein.

12          16.    Plaintiff Reginald Ento is an individual residing in Sacramento, California.

13   On or about January 1, 2009, Mr. Ento was arrested by local law enforcement officers, for alleged

14   receipt of stolen property (Cal. Penal Code § 496), specifically, outdated film cameras marked

15   "Property of U.S. Forest Service." This offense may be treated either as a misdemeanor or as a

16   felony at the prosecutor's or court's discretion. *Id.* § 17(a), (b). After he was arrested, Mr. Ento

17   was detained at the Sacramento County Jail. While incarcerated, a sheriff's deputy collected a

18   DNA sample from Mr. Ento by inserting a swab into his mouth and scraping the inside of his

19   cheek. Mr. Ento did not consent to this collection of his DNA. In fact, the deputy indicated that

20   if necessary, the DNA sample would be collected from Mr. Ento by force.

21          17.    No charges were ever filed against Mr. Ento based on this arrest. No law

22   enforcement entity or personnel obtained a warrant to take Mr. Ento's DNA.

23          18.    On information and belief, Defendants have analyzed or will soon analyze

24   Mr. Ento's DNA sample, and his DNA profile is, or shortly will be, uploaded into CODIS. On

25   information and belief, there is no other legal basis for the seizure, analysis, or retention of Mr.

26   Ento's DNA sample other than his arrest under Penal Code § 496 by the Sacramento County

27   police as alleged herein.

28

19.     None of the Plaintiffs is currently incarcerated or subject to any form of probation, parole, or other supervised release.  Upon information and belief, none of the Plaintiffs is currently the subject of a valid warrant or court order for the seizure of his or her DNA based upon a finding of probable cause or any reasonable suspicion linking him or her to any crime for which such DNA would be relevant evidence.  Nor does any other ground currently exist (apart from § 296(a)(2)(C)) on which any Plaintiff may be compelled to submit a sample of his or her body tissue for DNA testing and use for law enforcement purposes.

## Defendants

20.     All Defendants are sued in their official capacities only.

21.     Defendant Edmund G. Brown, Jr. is the Attorney General of the State of California.  Under Article 5, Section 13 of the California State Constitution, he is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced."  This provision further grants him "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law."  As Attorney General, defendant Brown also supervises the operations of the California Department of Justice.  Cal. Gov. Code § 12510.  The California Department of Justice is directly responsible for implementing § 296(a)(2)(C) and the state's DNA database and for ensuring that specimens are collected from arrestees.  Cal. Penal Code § 295(g)-(h).  To fulfill this responsibility, the Department of Justice has issued a number of administrative bulletins that govern local law-enforcement collection of DNA samples from arrestees, as authorized by Penal Code § 295(h).  Therefore, all California law enforcement personnel who collect DNA from arrestees pursuant to § 296(a)(2)(C) do so as agents of and in active participation with defendant Brown.

22.     Defendant Eva Steinberger is the Assistant Bureau Chief of Forensic Sciences and current director of the California Department of Justice Jan Bashinski DNA Laboratory in Richmond, in Contra Costa County, California.  This laboratory analyzes, stores, and compares the DNA samples collected pursuant to § 296(a)(2)(C), as mandated by statute.  *Id.* §§ 295(k), 295.1(c).  On information and belief, Steinberger has, in her capacity as director, responsibility for supervising functions of the Department of Justice and the California

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1   Department of Justice Laboratory in implementing § 296(a)(2)(C), including, *inter alia*, providing

2   procedural guidance, equipment, and materials to local law enforcement agencies for the seizure

3   of body tissue; receiving, maintaining, storing, and analyzing biological samples; contracting with

4   third parties to assist with DNA analysis; and maintaining databases and databanks of analysis

5   results and other information.

6          23.     Defendant Michael Hennessey is the Sheriff of San Francisco County. Cal.

7   Penal Code §§ 295 *et seq.* vests in this defendant, and the other law enforcement officers of San

8   Francisco County whom he supervises, the responsibility for the search and seizure of body tissue

9   from felony arrestees pursuant to § 296(a)(2)(C).

## CLASS ACTION ALLEGATIONS

### Plaintiff Class

12         24.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P.

13  23(b)(2) or, alternatively, Fed. R. Civ. P. 23(b)(1), on their own behalf and on behalf of all other

14  persons who are, or will be, compelled to submit to the search and seizure of their body tissue and

15  DNA under § 296(a)(2)(C) solely by reason of the fact that they have been arrested for, or

16  charged with, a felony offense (the "Plaintiff Class").

17         25.     The Plaintiff Class includes hundreds of thousands of people who are

18  arrested every year in California on suspicion of a felony.  It is so numerous that joinder is

19  impracticable.

20         26.     The claims of Plaintiff Class members share common issues of law,

21  including but not limited to:

22              a.      Whether the compulsory sampling, analysis, and retention of the DNA of

23                      members of the Plaintiff Class pursuant to § 296(a)(2)(C) violates the

24                      Fourth Amendment to the United States Constitution;

25              b.      Whether the compulsory sampling, analysis, and retention of the DNA of

26                      members of the Plaintiff Class, and the dissemination of DNA profiles and

27                      other information derived from those samples, pursuant to § 296(a)(2)(C)

28                      constitutes an excessive government intrusion into the Plaintiff Class

-8-

1    members' private and personal genetic information, in that it is neither

2    supported by a legitimate state purpose outweighing individual privacy

3    interests nor narrowly tailored to meet any legitimate state purpose, thus

4    violating the Plaintiff Class members' right to privacy under the Due

5    Process Clause of the Fourteenth Amendment of the United States

6    Constitution; and

7    c.    Whether the compulsory sampling, analysis, and retention of the DNA of

8    members of the Plaintiff Class pursuant to § 296(a)(2)(C) without a

9    requirement of any pre-testing due process protections or the mandatory

10   expungement of data and samples from persons against whom charges are

11   dropped, who are acquitted, whose convictions are reversed, or who are

12   otherwise adjudicated to be innocent, violates the Due Process Clause of

13   the Fourteenth Amendment to the United States Constitution.

14   27.    The claims of Plaintiff Class members share common issues of fact,

15   including but not limited to:

16   a.    The adverse effects that innocent arrestees will suffer from having their

17   DNA analyzed and placed in a criminal databank, including but not limited

18   to an increased danger of future arrest, of wrongful arrest and conviction,

19   and an invasion of their genetic privacy;

20   b.    The amount of personal information that the government may be able to

21   obtain through an analysis of an arrestee's DNA (either at the point of

22   initial analysis or any time thereafter by accessing the stored biological

23   sample) using current technology and in light of reasonably-projected

24   scientific advances;

25   c.    The extent to which the specific portions of the DNA molecule targeted for

26   analysis by California contain private information about the individual

27   arrestee, including information about familial relationships; and

28   d.    Whether collection of DNA from arrestees, on the mere fact of arrest for a

Case No.

-9-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1    felony, will exacerbate the already disproportionate representation of racial

2    minorities in the California criminal justice system, undermine the

3    legitimacy of that system, and contribute to the harmful notion that

4    criminality has a basis in biology.

5         28.    The claims or defenses of the named Plaintiffs are typical of the claims of

6    members of the Plaintiff Class.

7         29.    The named Plaintiffs will fairly and adequately protect the interests of the

8    Plaintiff Class. The named Plaintiffs have no interest that is now or may be potentially

9    antagonistic to the interests of the class. The attorneys representing the Plaintiffs include

10    experienced civil rights attorneys and are considered able practitioners in federal constitutional

11    litigation. These attorneys should be appointed as class counsel.

12         30.    Defendants have threatened to act and will continue to act on grounds

13    generally applicable to the Plaintiff Class, thereby making final injunctive and declaratory relief

14    appropriate to the class as a whole. The Plaintiff Class may therefore be properly certified

15    pursuant to Fed. R. Civ. P. 23(b)(2).

16         31.    Prosecution of separate actions by individual members of the Plaintiff

17    Class would create the risk of inconsistent or varying adjudications and would establish

18    incompatible standards of conduct for individual members of the Plaintiff Class. The Plaintiff

19    Class may therefore be properly certified, alternatively, under Fed. R. Civ. P. 23(b)(1).

20    **THE MATTERS IN CONTROVERSY**

21    **The Development and Sharing of DNA Databases**

22         32.    Before the passage of Proposition 69 in 2004, California law provided for

23    mandatory DNA testing of persons who had been convicted of certain serious felony offenses and

24    the inclusion of data derived from those tests in a state-wide database. Only persons who had

25    actually been convicted of one of the enumerated felonies were subject to this compulsory testing

26    program, and even in those cases the law provided important due process protections to those

27    whose DNA was taken. For example, the pre-Proposition 69 California statute provided for the

28    automatic expungement of the physical DNA sample and associated database entries for any

1   person whose conviction was reversed.  Before Proposition 69, California law enforcement also

2   had authority to conduct one-time searches (called "keyboard searches") using a DNA sample

3   obtained with a warrant or the subject's consent, whereby the DNA profile could be searched

4   against the forensic DNA profiles in CODIS.  However, this authority did not allow law

5   enforcement to permanently upload the subject's DNA profile into the database.

6        33.    California routinely shares DNA profiles and other information gathered

7   through its DNA testing programs with law enforcement agencies elsewhere.  California

8   participates in the nationwide Combined DNA Index System database ("CODIS").  CODIS is a

9   nationwide program, supervised by the Federal Bureau of Investigation, that automatically shares

10  the contents of every participating jurisdiction's, including California's, DNA Databases with law

11  enforcement throughout the nation.  As relevant to this case, CODIS contains a forensic database,

12  containing profiles of DNA recovered from crime scenes; an offender database, containing DNA

13  profiles of persons who have been convicted of certain crimes; and a more recent addition, an

14  arrestee database, containing DNA profiles of people merely arrested for certain crimes.  As of

15  2008, the CODIS database contains over 6.5 million offender profiles, including data derived

16  from state and federal DNA sampling programs, and not including the vast number of arrestee

17  profiles that will be added pursuant to § 296(a)(2)(C).  Information in the CODIS database is

18  widely available to law enforcement agencies throughout the United States, to international law

19  enforcement agencies such as Interpol, and to the national law enforcement agencies of other

20  countries.  Until recently, the federal CODIS system permitted only DNA data taken from

21  persons actually convicted of a felony to be included in the offender database; CODIS now

22  permits, however, inclusion of arrestee DNA profiles as well.

23        34.    The sharing of DNA profiles and other information gathered through DNA

24  testing is not limited to the CODIS system.  Law enforcement agencies in California are also

25  authorized to share DNA profiles and other information with one another, and with law

26  enforcement agencies in other states, through cross-references of individual state and local

27  databases.

28

Case No.

-11-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

35.     The purpose of the collection and sharing of data in CODIS and other criminal DNA databases is to provide DNA profiles that can be used to match against DNA found in crime-scene samples, in order to identify suspects in those crimes. The mandatory collection of DNA from arrestees in California pursuant to § 296(a)(2)(C) is intended to provide law enforcement with broad access to otherwise unavailable information about those individuals that might link them to offenses other than those for which they have been arrested.

### Proposition 69 and Penal Code §§ 295 *et seq.*

36.     Proposition 69, a copy of which is attached as Exhibit A, was approved by the California electorate in the November 2, 2004 general election, in accordance with Article II, Section 8 of the California Constitution.

37.     Proposition 69 amended Cal. Penal Code Sections 295 *et seq.* The amended statutes include several important new provisions that dramatically expand the reach of the State's mandatory testing regime, while at the same time eliminating key due-process protections that had previously existed.

38.     The declared purpose of the searches and seizures required by Proposition 69 is to further law enforcement goals:

> Law enforcement should be able to use the DNA Database and Data Bank Program to substantially reduce the number of unsolved crimes; to help stop serial crime by quickly comparing DNA profiles of qualifying persons and evidence samples with as many investigations and cases as necessary to solve crime and apprehend perpetrators; to exonerate persons wrongly suspected or accused of crime; and to identify human remains.

Proposition 69 § II(c). Proposition 69 further asserts that expanded DNA testing is "[t]he most reasonable and certain means" of enhancing the law enforcement interests in identifying and apprehending criminal offenders. *Id.* §§ II(d)(l)-(4).

39.     Proposition 69 requires that, as of "January 1 of the fifth year following" its enactment, any adult arrested for any felony must submit to DNA sampling." *Id.* § III(3), codified as Penal Code § 296(a)(2)(A). In Information Bulletin No. 04-BFS-03 dated March 15, 2005, the California Department of Justice confirmed that "[b]eginning in 2009, all adults

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

Case No.

1 arrested for any felony offense on or after January 1, 2009" are subject to mandatory search and

2 seizure of their body tissue for purposes of DNA analysis as set forth in § 296(a)(2)(C).

3       40.    The Department has directed that "DNA collection from arrestees should

4 occur during the booking process or as soon as possible after the arrest and before the subject is

5 released from confinement or custody." Cal. DoJ Info. Bulletin No. 08-BFS-02 at 2 (citing Penal

6 Code § 296.1(a)(1)(A)). Law enforcement is to check the arrestee's criminal history information

7 in the state and local databases before taking a sample to see whether the arrestee has already

8 provided a DNA sample, in order to prevent the taking of duplicate samples. *Id.* If the

9 Department already has "suitable DNA sample and print impressions" on file for that arrestee, a

10 new sample will not be taken. *Id.*

11       41.    Cal. Penal Code §§ 295 *et seq.* establishes a presumption that body tissue

12 samples will be taken through the "buccal swab" method, by which inner cheek cells are scraped

13 from the inside of the mouth. Body tissue may be taken, however, through other methods (*e.g.*,

14 blood sampling) at the direction of the California Department of Justice. *Id.* § 295(e). The

15 Department of Justice is directed to provide appropriate equipment, materials, and instructions to

16 each facility at which body tissue is to be seized.

17       42.    Refusal to submit to sampling is a crime, punishable by one year in jail and

18 a fine. *Id.* § 298.1(a). In addition, law enforcement is authorized to physically force a person to

19 give a sample. *Id.* § 298(b).

20       43.    Once taken, the arrestee's body tissue is forwarded to the Jan Bashinski

21 DNA Laboratory of the Department of Justice (the "Bashinski Lab"). The Bashinski Lab then

22 arranges for the DNA analysis to be performed, either by its own personnel or through third-party

23 contractors. After the analysis is completed, the results are entered into the state's DNA Database

24 and shared freely with other law enforcement agencies nationally and internationally, including

25 (but not limited to) through the CODIS system.

26       44.    Cal. Penal Code §§ 295 *et seq.* does not effectively limit the types of

27 genetic information to be collected and maintained from the biological sample and does not

28 require destruction of the underlying sample after the DNA profile has been created and uploaded

1    into the database. Instead, the body tissue sample is retained indefinitely for further analysis.

2    Thus, the statute allows the state to maintain *all* genetic information that can be derived from an

3    arrestee's DNA.

4            45.    As amended by Proposition 69, California law fails to provide for the

5    automatic expungement of data and samples taken from persons whose convictions are

6    overturned. Nor is there any provision for automatic expungement of samples taken from persons

7    who are arrested but never charged, persons against whom charges are dropped, persons who are

8    acquitted, or even persons who are found by a court to be factually innocent of the offense for

9    which they were arrested. Instead, any person who wants to have his or her sample expunged

10   must file a petition for such expungement in the court of the county where the arrest occurred as

11   described below.

12           46.    Arrestees who were never charged with an offense – such as Ms. Haskell

13   and Mr. Ento – must wait a minimum of three years before requesting expungement. Such people

14   can only file a request for expungement if "no accusatory pleading has been filed within the

15   applicable period allowed by law charging the person with a qualifying offense as set forth in

16   subdivision (a) of Section 296." § 299(b)(1). This "applicable period allowed by law" is the

17   statute of limitations, which ranges from a minimum of three years for even the least serious

18   felony to a maximum of life for embezzlement of public money or for any offense that carries a

19   life sentence. §§ 799-801. During this waiting period, the person's profile will remain in the

20   DNA database and be searched repeatedly. Because CODIS conducts a routine, weekly search of

21   DNA offender/arrestee profiles against profiles generated from crime scene samples (in addition

22   to any additional searches as needed), the person will have their DNA profile searched on a

23   weekly basis, at minimum, during this three-year waiting period.

24           47.    In addition, no expungement petition may be granted until at least 180 days

25   following the filing of the petition, and no limits are imposed on the use of the petitioner's DNA

26   data or dissemination of that data to other law enforcement agencies during that 180-day period.

27   And even if the petition for expungement is granted, no mechanism is provided for the return of

28

1   the petitioner's DNA sample, profile, or other information from other law enforcement agencies

2   with whom it has been shared.

3          48.    Even after these lengthy waiting periods, the court cannot grant a petition if

4   either the prosecuting attorney or the Department of Justice has objected to it; thus, the law allows

5   the prosecuting attorney and Department of Justice, or either of them, to block expungement

6   merely by filing an objection. *See* § 299(c)(2)(d). In addition, the law expressly provides that

7   "[t]he court has the discretion to grant or deny the request for expungement," without setting forth

8   any factors that should guide the court's discretion. § 299(c)(1). Furthermore, "denial of a

9   request for expungement is a nonappealable order and shall not be reviewed by petition for writ."

10  § 299(c)(1). This means not only that arrestees whose requests for expungement are denied have

11  no recourse, but also that California appellate courts will have no opportunity to make decisional

12  law to guide the trial courts' discretion. Thus, the court's ability to deny such a petition is

13  completely standardless and unreviewable.

14         49.    Finally, the statute allows the Department of Justice to refuse to destroy a

15  sample even after it has received the requisite court order for destruction, if the Department

16  determines that it has additional grounds to maintain the sample. § 299(d). The law does not

17  provide for any sort of challenge or appeal if the Department refuses to destroy a sample after

18  receiving a court order.

19         50.    When a sample is analyzed and the resulting profile is put into CODIS, that

20  profile is then regularly and automatically accessed, searched, and compared with millions of

21  other DNA profiles in the CODIS system. In general, these searches occur weekly. Thus, even if

22  an arrestee is eventually successful in getting her sample destroyed and profile expunged, during

23  the delays discussed above that profile will have been accessed multiple times.

24         51.    On information and belief, the CODIS database, like most government

25  computer databases, is regularly backed-up. On information and belief, there is no procedure for

26  removing arrestee profiles from these backup copies of the database.

27         52.    Cal. Penal Code §§ 295 *et seq.* allows for the sharing of DNA profiles

28  and/or the underlying biological samples with a broad array of international, federal, state and

1   local law enforcement officers, including private crime laboratories and other third parties that

2   have been approved by the Department of Justice.  Therefore, the procedural and substantive

3   barriers to expungement, including those alleged herein, are inadequate to bring § 296(a)(2)(C)

4   within the constitutional boundaries of the Fourth and Fourteenth Amendments to the United

5   States Constitution because the Plaintiff Class will suffer continuing injury due to the presence of

6   class members' DNA profile in DNA databases before any prerequisites to expungement can be

7   satisfied.

8           53.     The Department of Justice publishes regular statistical reports on the

9   number of samples being collected and processed at the Bashinski Lab.  The reports show that the

10  state is collecting tens of thousands of new DNA samples per month under authority of Penal

11  Code §§ 295 *et seq.*  The 2009 reports that have been published so far consistently show that the

12  backlog of untested DNA samples continues to grow as more samples are received by the

13  laboratory than are analyzed and uploaded into CODIS.

14          54.     For example, the Department's report for the first quarter of 2009 shows

15  that between January 1 and March 31, the lab uploaded 58,534 profiles to CODIS, an average of

16  19,511 samples per month.  During this same three-month period, the lab received 73,797

17  samples, meaning that the backlog of samples that had been received but not yet analyzed and

18  uploaded into CODIS grew by 15,263.  The Department reports that as of March 31, 2009, this

19  backlog included 49,982 samples.

20          55.     Similarly, the Department reports that in April 2009 the lab's backlog grew

21  by an additional 3,608 samples, to 53,590.  During this period, the lab uploaded 25,579 profiles to

22  CODIS, while receiving 29,287.  Thus, the lab's ending backlog totaled more than twice the

23  number of samples that it was able to analyze and upload into CODIS during the month of April,

24  and more than 2.5 times the average monthly number of samples it was able to analyze and

25  upload during the first quarter of 2009.

26          56.     On information and belief based on these figures, the average time between

27  the lab's receipt of an arrestee sample and the eventual uploading to CODIS of the profile

28  associated with that sample is more than two months.

-16-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

## The Nature Of DNA Testing And The Impact On Plaintiffs

57.     Under Cal. Penal Code §§ 295 *et seq.*, the body tissue seized from Plaintiffs and others will be processed, or has already been processed, to extract samples of their DNA, which are then analyzed to generate DNA profiles. DNA (an abbreviation for "deoxyribonucleic acid") is the cellular material that contains each person's unique genetic code.

58.     The DNA profiles that are currently stored in law enforcement databases are sometimes referred to as "DNA fingerprints." This is a misnomer, for although fingerprints and DNA resemble each other in that each is unique for each individual person, the seizure, banking, and analysis of DNA samples differs fundamentally from the mere taking of a fingerprint.

59.     Fingerprinting involves the creation of an image or impression of the external physical conformation of the fingertips, and a fingerprint reveals nothing more about the person than the unique patterns on the skin of his or her fingers. Thus, while fingerprints can be used effectively to provide evidence of the identity of a person, they reveal no other information about that person.

60.     DNA, in contrast, is a microscopic arrangement of chemical constituents within the nucleus of a human cell that make up an individual's genetic blueprint. DNA analysis can reveal a vast array of highly private information, including familial relationships, ethnic traits and other physical characteristics, genetic defects, and propensity to certain diseases, such as sickle-cell anemia, Down syndrome, and certain types of cancers. The amount of information about a person that can be revealed by DNA is expanding every year. Some scientists have suggested that DNA analysis can be used to predict personality traits, propensity for antisocial behavior, and sexual orientation, as well as an ever-expanding variety of existing and future health conditions and other physical traits.

61.     Already, state and federal officials have issued policy memoranda authorizing the use of state and federal DNA databases for so-called familial searching – more accurately known as partial-match searching – where the database is used to locate a person who does not match the crime-scene sample but whose DNA is *similar* to that left at the scene, in the

-17-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1   hope that the near-match may be a family member of the perpetrator.  Thus, rather than using the

2   database to identify the culprit, it is used to single-out an individual who is demonstrably innocent

3   of the crime – because the crime scene DNA does not match his – in the hope that investigating

4   this innocent person will provide a clue to the identity of the actual culprit.  This represents an

5   unreasonable intrusion into the private life of an individual who has not even been accused of a

6   crime but who may or may not be related to the perpetrator.  A DNA specialist with the California

7   Department of Justice acknowledged this in a 2007 internal memorandum analyzing the

8   desirability of allowing for familial searching.  That memorandum provided that "a policy of

9   disclosing partial database matches would shift the delicate Fourth Amendment balance that

10   courts have struck in holding DNA database programs constitutional by diluting the state interest

11   in the expeditious and accurate nature of the DNA database while weakening the disclosure

12   restrictions that minimize invasions of privacy" and that a "policy permitting the reporting of

13   arrestee names for the purpose of investigating potential relatives, even before those arrestees

14   have been convicted (or not convicted and consequently expunged) could be viewed as an

15   overreaching application of the Database.  In turn, this may impair DOJ's arguments in support of

16   the Fourth Amendment reasonableness of arrestee collections in the first instance."

17          62.     Due to the expansive nature of the information that may be gleaned from

18   an individual's DNA, the compulsory seizure of biological material from Plaintiffs for the

19   purpose of constructing Plaintiffs' DNA profiles provides law enforcement personnel and other

20   government officials with direct access to the most fundamentally private personal information

21   that any person possesses.  Such seizure invades a location – the genetic code locked within each

22   person's cells – in which, absent unusual circumstances, the average person has the very highest

23   possible expectation of privacy.

24          63.     Arrestee testing, if allowed to go forward unfettered, will serve to worsen

25   the race-based inequities present in our criminal-justice system.  Racial minorities are already

26   disproportionately represented in California's criminal justice system, particularly at the arrestee

27   level.  Mandatory arrestee DNA collection means that anybody who is arrested for a felony will

28   forever have his DNA included in the CODIS database, unless he is successfully able to navigate

1   the cumbersome expungement process. He will therefore face a lifetime of what some

2   researchers have called genetic surveillance, with his DNA continually being compared against

3   DNA taken from crime scenes throughout the nation. With the increased use of so-called familial

4   searching, his family will also be included in this surveillance. This will further increase the

5   impact of arrestee testing on people of color and their communities.

6   **Declaratory Relief Under 28 U.S.C. §§ 2201, 2202**

7         64.   Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-63,

8   above, as though fully set forth.

9         65.   There exists an actual, present and justiciable controversy between

10  Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct

11  described herein. Plaintiffs contend that Defendants violated, and continue to violate, Plaintiffs'

12  rights under the constitutions and laws of the United States, specifically that, on its face and as

13  applied to them and to others in the Plaintiff Class, § 296(a)(2)(C) is unlawful and

14  unconstitutional. On information and belief, Defendants deny that their conduct violated, or

15  continues to violate, Plaintiffs' rights under the constitutions and laws of the United States.

16  Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional

17  actions, and seek a judicial declaration that Defendants' conduct deprived, and continues to

18  deprive, Plaintiffs of their rights under the constitution and laws of the United States.

19        66.   This controversy is ripe for judicial decision, and declaratory relief is

20  necessary and appropriate so that the parties may know the legal obligations that govern their

21  present and future conduct.

22  **COUNT I:  VIOLATION OF THE FOURTH AMENDMENT TO**

23  **THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

24        67.   Plaintiffs hereby reallege and incorporate by reference the allegations

25  contained in Paragraphs 1-66 as though fully set forth herein.

26        68.   The Fourth Amendment to the United States Constitution protects the right

27  of people to be free from unreasonable searches and seizures and prohibits searches or seizures

28

Case No.

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1  for law enforcement purposes absent a warrant or a recognized exception to the warrant

2  requirement.

3         69.    Plaintiffs have a reasonable expectation that their bodily integrity and their

4  genetic privacy will be respected.

5         70.    Section 296(a)(2)(C) mandates the compulsory seizure and search of

6  biological material from Plaintiffs and other members of the Plaintiff Class, and the DNA

7  analysis of that biological material for generalized law enforcement purposes, without a warrant

8  or any required showing of probable cause or individualized suspicion linking the person at issue

9  to any specific crime for which his or her DNA is relevant.

10         71.    The involuntary extraction of biological material from the Plaintiff Class

11  for purposes of DNA analysis pursuant to § 296(a)(2)(C) constitutes an unreasonable search and

12  seizure under the Fourth Amendment to the United States Constitution.

13         72.    Every analysis of these biological samples by government personnel serves

14  to reveal information about the person whose DNA is being examined and therefore constitutes a

15  further and independent search (and violation) of the Fourth Amendment beyond that occasioned

16  by the initial extraction of the biological sample.

17         73.    The compulsory and warrantless search and seizure of biological material

18  from Plaintiffs and members of the Plaintiff Class is inherently unreasonable within the meaning

19  of the Fourth Amendment and is not supported by any recognized exception to the Fourth

20  Amendment's warrant and probable cause requirements. The subsequent DNA analysis and

21  storage of such biological material further constitutes an unreasonable search and seizure within

22  the meaning of the Fourth Amendment and is also not justified by any recognized exception to

23  the warrant and probable cause requirements. On its face and as applied to the Plaintiff Class, §

24  296(a)(2)(C) is accordingly unconstitutional.

25  / / /

26  / / /

27  / / /

28  / / /

Case No.                            CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

## COUNT II:  VIOLATION OF SUBSTANTIVE DUE PROCESS

## UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES

## CONSTITUTION (42 U.S.C. § 1983)

74.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1-73 as though fully set forth herein.

75.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides a substantive right to privacy with respect to personal matters such as medical and genetic information.

76.    Because § 296(a)(2)(C) requires government intrusion into private and personal genetic information of Plaintiffs by procuring, analyzing, indefinitely retaining, and disseminating their biological samples and DNA information, the Fourteenth Amendment to the United States Constitution requires that the intrusion be supported by a legitimate governmental purpose that outweighs Plaintiffs' privacy interests and that the intrusion be narrowly tailored to meet that legitimate purpose.

77.    California's interest in maintaining biological samples and DNA profiles from arrestees does not outweigh Plaintiffs' privacy interests with respect to their genetic material; nor is Cal. Penal Code §§ 295 *et seq.*, including § 296(a)(2)(C), narrowly tailored to further the state's interest.  Accordingly, § 296(a)(2)(C), on its face and as applied to the Plaintiff Class, violates their rights to privacy and substantive due process under the Fourteenth Amendment to the United States Constitution.

## COUNT III:  VIOLATION OF PROCEDURAL DUE PROCESS

## UNDER THE FOURTEENTH AMENDMENT TO THE

## UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

78.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1-77 as though fully set forth herein.

79.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the deprivation of life, liberty or property without due process of law.

Case No.

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

80.   Cal. Penal Code §§ 295 *et seq.* violates procedural process in numerous respects, including the following:

    a.   Cal. Penal Code §§ 295 *et seq.* denies Plaintiffs any opportunity to be heard as to whether any legitimate reason exists for the compulsory seizure and DNA analysis of their biological material for law enforcement purposes;

    b.   Cal. Penal Code §§ 295 *et seq.* denies Plaintiffs meaningful remedies to assure complete, certain, and immediate expungement of and destruction of their biological samples, DNA profiles, and other data should their arrests not lead to a felony conviction or if any conviction is overturned; and

    c.   Cal. Penal Code §§ 295 *et seq.* requires the deprivation of Plaintiffs' property and liberty interests in their own biological and genetic material without notice or any opportunity to be heard as to whether the arrest giving rise to the compulsory collection of their biological samples was lawful.

81.   Because it fails to afford such basic procedural protections to Plaintiffs and other members of the Plaintiff Class who are subject to its mandatory testing provisions, Cal. Penal Code §§ 295 *et seq.* violates on its face and as applied to the Plaintiff Class, the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Class, seek the following relief:

1.   A declaration that California Penal Code § 296(a)(2)(C) is unconstitutional on its face and as applied to persons who are subject to its compulsory search and seizure provision solely as a result of their status as persons who have been arrested for, or charged with, a felony.

2.   A preliminary and permanent injunction:

    a)   enjoining Defendants, including all of defendant Brown's officers, agents, servants, employees, attorneys, and other persons in active concert or participation with defendant Brown, from the

Case No.

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1    compulsory search, seizure, collection, analysis, and/or retention of

2    biological samples from any member of the Plaintiff Class made

3    pursuant to California Penal Code § 296(a)(2)(C) until and unless

4    he or she is actually convicted of a felony offense, unless such

5    search, seizure, collection, analysis, and/or retention is supported by

6    a warrant issued on probable cause;

7    b)   enjoining Defendants, including all of defendant Brown's officers,

8    agents, servants, employees, attorneys, and other persons in active

9    concert or participation with defendant Brown, from assisting any

10   other state or local law enforcement official or third party in

11   searching, seizing, collecting, analyzing, or retaining biological

12   samples, or DNA data obtained from such samples, from any

13   member of the Plaintiff Class made pursuant § 296(a)(2)(C) until

14   and unless he or she is actually convicted of a felony offense, unless

15   such search, seizure, collection, analysis, and/or retention is

16   supported by a warrant issued on probable cause; and

17   c)   ordering Defendants, including all of defendant Brown's officers,

18   agents, servants, employees, attorneys, and other persons in active

19   concert or participation with defendant Brown, to promptly destroy

20   any biological samples obtained from members of the Plaintiff

21   Class pursuant § 296(a)(2)(C) that are in their possession or that

22   have been, or in the future are, forwarded to the Department of

23   Justice (or any entity with which it has contracted), and to expunge

24   all associated DNA profiles and other data from all state and local

25   databases and other files, unless the submitting law enforcement

26   agency has certified that the sample was taken either (i) following

27   conviction for a felony offense or (ii) pursuant to a warrant issued

28

Case No.

-23-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF

1    upon probable cause or other court order issued under authority

2    other than § 296(a)(2)(C).

3         3.        Costs and attorneys fees incurred in this action pursuant to 42 U.S.C.

4    §1988 and other applicable authority.

5         4.        Such other and further relief as may be just and proper.

6

7    DATED:  October 7, 2009              PAUL, HASTINGS, JANOFSKY & WALKER LLP

8

9

10   By: _____
                                         Peter C. Meier

11

12   AMERICAN CIVIL LIBERTIES UNION
       FOUNDATION OF NORTHERN CALIFORNIA, INC.

13

14

15   By: _____
                                         Michael T. Risher

16

17   Attorneys for Plaintiffs
     ELIZABETH AIDA HASKELL and REGINALD ENTO,
     on behalf of themselves and others similarly situated

18

19

20

21

22

23

24

25

26

27

28

Case No.

-24-

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED:  October 7, 2009

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
                    Peter C. Meier

Attorneys for Plaintiffs
ELIZABETH AIDA HASKELL and REGINALD ENTO,
on behalf of themselves and others similarly situated

LEGAL_US_W # 62859554.1

Case No.

-25-

CLASS ACTION COMPLAINT FOR
DECLARATORY & INJUNCTIVE RELIEF