**EXHIBIT A**

*SEC. 8.3. (a) Funds appropriated pursuant to the Gaming Revenue Act of 2004 shall not be deemed to be part of "total allocations to school districts and community college districts from General Fund proceeds of taxes appropriated pursuant to Article XIII B" as that term is used in paragraphs (2) and (3) of subdivision (b) of Section 8.*

*(b) Revenues derived from payments made pursuant to the Gaming Revenue Act of 2004 shall not be deemed to be "General Fund revenues", which may be appropriated pursuant to Article XIII B" as that term is used in paragraph (1) of subdivision (b) of Section 8 nor shall they be considered in the determination of "per capita General Fund revenues" as that term is used in paragraph (3) of subdivision (b) and in subdivision (e) of Section 8.*

SEC. 14. Section 14 is added to Article XIII B of the California Constitution, to read:

*SEC. 14. (a) For purposes of this article, "proceeds of taxes" shall not include the revenues created by the Gaming Revenue Act of 2004.*

*(b) For purposes of this article, "appropriations subject to limitation" of each entity of government shall not include appropriations of revenues from the Gaming Revenue Trust Fund created by the Gaming Revenue Act of 2004.*

SEC. 15. Amendment

The statutory provisions of this act may be amended only by a vote of two-thirds of the membership of both houses of the Legislature. All statutory amendments to this act shall be to further the act and must be consistent with its purposes.

SEC. 16. Consistency With Other Ballot Measures

The provisions of this act are not in conflict with any initiative measure that appears on the same ballot that amends the California Constitution to authorize gaming of any kind. In the event that this act and another measure that amends the California Constitution to permit gaming of any kind are adopted at the same election, the courts are hereby directed to reconcile their respective statutory provisions to the greatest extent possible and to give effect to every provision of both measures.

SEC. 17. Additional Funding

No moneys in the Gaming Revenue Trust Fund shall be used to supplant federal, state, or local funds used for child protective and foster care services, neighborhood sheriffs and police officers, and firefighters but shall be used exclusively to supplement the total amount of federal, state, and local funds allocated for child protective services and foster care which improve the educational outcomes of abused and neglected children and children in foster care and for additional sheriffs, police officers, and firefighters.

SEC. 18. Judicial Proceedings

In any action for declaratory or injunctive relief, or for relief by way of any extraordinary writ, wherein the construction, application, or validity of Section 3 of this act or any part thereof is called into question, a court shall not grant any temporary restraining order, preliminary or permanent injunction, or any peremptory writ of mandate, certiorari, or prohibition, or other provisional or permanent order to restrain, stay, or otherwise interfere with the operation of the act except upon a finding by the court, based on clear and convincing evidence, that the public interest will not be prejudiced thereby, and no such order shall be effective for more than 15 calendar days. A court shall not restrain any part of this act except the specific provisions that are challenged.

SEC. 19. Severability

If any provision of this act or the application thereof to any person or circumstances is held invalid or unconstitutional, such invalidity or unconstitutionality shall not affect other provisions or applications of this act that can be given effect without the invalid or unconstitutional provision or application, and to this end the provisions of this act are severable.

## Proposition 69

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends a section of the Government Code, and amends, repeals, and adds sections to the Penal Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW

SECTION I. Title

(a) This measure shall be known and referred to as the DNA Fingerprint, Unsolved Crime and Innocence Protection Act.

SEC. II. Findings and Declarations of Purpose

The people of the State of California do hereby find and declare that:

(a) Our communities have a compelling interest in protecting themselves from crime.

(b) There is critical and urgent need to provide law enforcement officers and agencies with the latest scientific technology available for accurately and expeditiously identifying, apprehending, arresting, and convicting criminal offenders and exonerating persons wrongly suspected or accused of crime.

(c) Law enforcement should be able to use the DNA Database and Data Bank Program to substantially reduce the number of unsolved crimes; to help stop serial crime by quickly comparing DNA profiles of qualifying persons and evidence samples with as many investigations and cases as necessary to solve crime and apprehend perpetrators; to exonerate persons wrongly suspected or accused of crime; and to identify human remains.

(d) Expanding the statewide DNA Database and Data Bank Program is:

(1) The most reasonable and certain means to accomplish effective crime solving in California, to aid in the identification of missing and unidentified persons, and to exonerate persons wrongly suspected or accused of crime;

(2) The most reasonable and certain means to solve crime as effectively as other states which have found that the majority of violent criminals have nonviolent criminal prior convictions, and that the majority of cold hits and criminal investigation links are missed if a DNA database or data bank is limited only to violent crimes;

(3) The most reasonable and certain means to rapidly and substantially increase the number of cold hits and criminal investigation links so that serial crime offenders may be identified, apprehended and convicted for crimes they committed in the past and prevented from committing future crimes that would jeopardize public safety and devastate lives; and

(4) The most reasonable and certain means to ensure that California's Database and Data Bank Program is fully compatible with, and a meaningful part of, the nationwide Combined DNA Index System (CODIS).

(e) The state has a compelling interest in the accurate identification of criminal offenders, and DNA testing at the earliest stages of criminal proceedings for felony offenses will help thwart criminal perpetrators from concealing their identities and thus prevent time-consuming and expensive investigations of innocent persons.

(f) The state has a compelling interest in the accurate identification of criminal offenders, and it is reasonable to expect qualifying offenders to provide forensic DNA samples for the limited identification purposes set forth in this chapter.

(g) Expanding the statewide DNA Database and Data Bank Program is the most reasonable and certain means to ensure that persons wrongly suspected or accused of crime are quickly exonerated so that they may reestablish their standing in the community. Moreover, a person whose sample has been collected for Database and Data Bank purposes must be able to seek expungement of his or her profile from the Database and Data Bank.

SEC. III. DNA and Forensic Identification Database and Data Bank Act



Sec. 1. Section 295 of the Penal Code is amended to read:

295. (a) This chapter shall be known and may be cited as the DNA and Forensic Identification ~~Data Base~~ *Database* and Data Bank Act of 1998, *as amended*.

(b) The ~~Legislature finds and declares~~ *people of the State of California set forth* all of the following:

(1) Deoxyribonucleic acid (DNA) and forensic identification analysis is a useful law enforcement tool for identifying and prosecuting ~~sexual and violent offenders~~ *criminal offenders and exonerating the innocent*.

(2) It is the intent of the ~~Legislature~~ *people of the State of California*, in order to further the purposes of this chapter, to require DNA and forensic identification ~~databank~~ *data bank* samples *from all persons, including juveniles,* for the felony *and misdemeanor* offenses described in subdivision (a) of Section 296.

(3) It is necessary to enact this act defining and governing the state's DNA and forensic identification database and ~~databank~~ *data bank* in order to clarify existing law and to enable the state's DNA and ~~forensic identification database and databank program~~ *Forensic Identification Database and Data Bank Program* to become a more effective law enforcement tool.

(c) The purpose of the DNA and ~~forensic identification databank~~ *Forensic Identification Database and Data Bank Program* is to assist federal, state, and local criminal justice and law enforcement agencies within and outside California in the expeditious *and accurate* detection and prosecution of individuals responsible for sex offenses and other ~~violent~~ crimes, the exclusion of suspects who are being investigated for these crimes, and the identification of missing and unidentified persons, particularly abducted children.

*(d) Like the collection of fingerprints, the collection of DNA samples pursuant to this chapter is an administrative requirement to assist in the accurate identification of criminal offenders.*

*(e) Unless otherwise requested by the Department of Justice, collection of biological samples for DNA analysis from qualifying persons under this chapter is limited to collection of inner cheek cells of the mouth (buccal swab samples).*

*(f) The Department of Justice DNA Laboratory may obtain through federal, state, or local law enforcement agencies blood specimens from qualifying persons as defined in subdivision (a) of Section 296, and according to procedures set forth in Section 298, when it is determined in the discretion of the Department of Justice that such specimens are necessary in a particular case or would aid the department in obtaining an accurate forensic DNA profile for identification purposes.*

~~(d)~~ *(g)* The Department of Justice, through its DNA Laboratory, shall be responsible for the management and administration of the state's ~~DNA database and databank identification program~~ *DNA and Forensic Identification Database and Data Bank Program* and for liaison with the Federal Bureau of Investigation (FBI) regarding the state's participation in a national *or international* DNA database *and data bank program* such as the FBI's Combined DNA Index System (CODIS) that allows the storage and exchange of DNA records submitted by state and local forensic DNA laboratories nationwide.

~~(e)~~ *(h)* The Department of Justice shall be responsible for implementing this chapter.

*(1)* The Department of Justice DNA Laboratory, the Department of Corrections, *the Board of Corrections,* and the Department of the Youth Authority ~~shall~~ *may* adopt policies and enact regulations for the implementation of this chapter, as necessary, to give effect to the intent and purpose of this chapter, and to ensure that ~~databank~~ *data bank* blood specimens, ~~saliva~~ *buccal swab* samples, and thumb and palm print impressions *as required by this chapter* are collected from qualifying ~~offenders~~ *persons* in a timely manner, as soon as possible after arrest, conviction, or a plea or finding of guilty, no contest, or not guilty by reason of insanity, or upon ~~the~~ *any* disposition rendered in the case of a juvenile who is ~~adjudged a ward of the court~~ *adjudicated* under Section 602 of the Welfare and Institutions Code for commission of any of this chapter's enumerated qualifying offenses, *including attempts,* or when it is determined that a qualifying ~~offender~~ *person* has not given the required specimens, samples *or print impressions*. ~~The~~ *Before adopting any policy or regulation implementing this chapter, the* Department of Corrections, *the Board of Corrections,* and the Department of the Youth Authority shall ~~adopt the policies and regulations for implementing this chapter with~~ *seek* advice from and ~~in consultation~~ *consult* with the Department of Justice DNA Laboratory Director.

*(2) Given the specificity of this chapter, and except as provided in subdivision (c) of Section 298.1, any administrative bulletins, notices, regulations, policies, procedures, or guidelines adopted by the Department of Justice and its DNA Laboratory, the Department of Corrections, the Department of the Youth Authority, or the Board of Corrections for the purpose of the implementing this chapter are exempt from the provisions of the Administrative Procedure Act, Chapter 3.5 (commencing with Section 11340), Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with Section 11400), and Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code.*

*(3) The Department of Corrections, the Board of Corrections, and the Department of the Youth Authority shall submit copies of any of their policies and regulations with respect to this chapter to the Department of Justice DNA Laboratory Director, and ~~periodically~~ quarterly shall submit to the director written reports updating the director as to the status of their compliance with this chapter.*

*(4) On or before April 1 in the year following adoption of the act that added this paragraph, and quarterly thereafter, the Department of Justice DNA Laboratory shall submit a quarterly report to be published electronically on a Department of Justice website and made available for public review. The quarterly report shall state the total number of samples received, the number of samples received from the Department of Corrections, the number of samples fully analyzed for inclusion in the CODIS database, and the number of profiles uploaded into the CODIS database for the reporting period. Each quarterly report shall state the total, annual, and quarterly number of qualifying profiles in the Department of Justice DNA Laboratory data bank both from persons and case evidence, and the number of hits and investigations aided, as reported to the National DNA Index System. The quarterly report shall also confirm the laboratory's accreditation status and participation in CODIS and shall include an accounting of the funds collected, expended, and disbursed pursuant to subdivision (k).*

*(5) On or before April 1 in the year following adoption of the act that added this paragraph, and quarterly thereafter, the Department of Corrections shall submit a quarterly report to be published electronically on a Department of Corrections website and made available for public review. The quarterly report shall state the total number of inmates housed in state correctional facilities, including a breakdown of those housed in state prisons, camps, community correctional facilities, and other facilities such as prisoner mother facilities. Each quarterly report shall also state the total, annual, and quarterly number of inmates who have yet to provide specimens, samples and print impressions pursuant to this chapter and the number of specimens, samples and print impressions that have yet to be forwarded to the Department of Justice DNA Laboratory within 30 days of collection.*

~~(f)~~ *(i)* (1) When the specimens, samples, and print impressions required by this chapter are collected at a county jail or other county ~~detention~~ facility, including a private community correctional facility, the county sheriff or chief administrative officer of the county jail or other ~~detention~~ facility shall be responsible for ensuring all of the following:

(A) The requisite specimens, samples, and print impressions are collected from qualifying ~~offenders~~ *persons immediately following arrest, conviction, or adjudication, or* during the *booking or* intake *or reception center* process at that facility, or reasonably promptly thereafter.

(B) The requisite specimens, samples, and print impressions are collected as soon as administratively practicable after a qualifying ~~offender~~ *person* reports to the facility for the purpose of providing specimens, samples, and print impressions.

(C) The specimens, samples, and print impressions collected pursuant to this chapter are forwarded immediately to the Department of Justice, and in compliance with department policies.

(2) The specimens, samples, and print impressions required by this chapter shall be collected by a person using a collection kit approved by the Department of Justice and in accordance with the requirements and procedures set forth in subdivision (b) of Section 298.

(3) The counties shall be reimbursed for the costs of obtaining specimens, samples, and print impressions subject to the conditions and limitations set forth by the Department of Justice policies governing reimbursement for collecting specimens, samples, and print impressions pursuant to this chapter.

*(j) The trial court may order that a portion of the costs assessed pursuant to Section 1203.1c, 1203.1e, or 1203.1m include a reason-*

able portion of the cost of obtaining specimens, samples, and print impressions *in furtherance of this chapter and the funds collected pursuant to this subdivision shall be deposited in the Department of Justice DNA Testing Fund as created by paragraph (2) of subdivision (b) of Section 290.3*.

~~(g)~~ *(k)* Any funds appropriated by the Legislature to implement this chapter, including funds *or costs ordered pursuant to subdivision (j)* to reimburse counties, shall be deposited into the Department of Justice DNA Testing Fund as created by paragraph (2) of subdivision (b) of Section 290.3.

~~(h)~~ *(l)* The Department of Justice DNA Laboratory shall be known as the Jan Bashinski DNA Laboratory.

SEC. 2. Section 295.1 of the Penal Code is amended to read:

295.1. (a) The Department of Justice shall perform DNA analysis and other forensic identification analysis pursuant to this chapter only for identification purposes.

(b) The Department of Justice Bureau of Criminal Identification and Information shall perform examinations of palm prints pursuant to this chapter only for identification purposes.

(c) The DNA Laboratory of the Department of Justice shall serve as a repository for blood specimens and ~~saliva~~ *buccal swab* and other biological samples collected, and shall analyze specimens and samples, and store, compile, correlate, compare, maintain, and use DNA and forensic identification profiles and records related to the following:

(1) Forensic casework *and forensic unknowns*.

(2) Known and evidentiary specimens and samples from crime scenes or criminal investigations.

(3) Missing or unidentified persons.

(4) ~~Offenders~~ *Persons* required to provide specimens, samples, and print impressions under this chapter.

*(5) Legally obtained samples.*

~~(5)~~ *(6)* Anonymous DNA records used for training, research, statistical analysis of populations, *quality assurance,* or quality control.

(d) The computerized data bank *and database* of the DNA Laboratory of the Department of Justice shall include files as necessary to implement this chapter.

(e) Nothing in this section shall be construed as requiring the Department of Justice to provide *specimens or* samples for quality control or other purposes to those who request *specimens or* samples.

*(f) Submission of samples, specimens, or profiles for the state DNA Database and Data Bank Program shall include information as required by the Department of Justice for ensuring search capabilities and compliance with National DNA Index System (NDIS) standards.*

SEC. 3. Section 296 of the Penal Code is amended to read:

296. *(a) The following persons shall provide buccal swab samples, right thumbprints, and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to this chapter for law enforcement identification analysis:*

~~(a)~~ (1) Any person, *including any juvenile,* who is convicted of *or pleads guilty or no contest to any felony offense* ~~any of the following crimes~~, or is found not guilty by reason of insanity of any ~~of the following crimes,~~ *felony offense, or any juvenile who is adjudicated under Section 602 of the Welfare and Institutions Code for committing any felony offense.* ~~shall, regardless of sentence imposed or disposition rendered, be required to provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand for law enforcement identification analysis:~~

~~(A) Any offense or attempt to commit any felony offense described in Section 290, or any felony offense that imposes upon a person the duty to register in California as a sex offender under Section 290.~~

~~(B) Murder in violation of Section 187, 190, 190.05, or any degree of murder as set forth in Chapter 1 (commencing with Section 187) of Title 8 of Part 1 of the Penal Code, or any attempt to commit murder.~~

~~(C) Voluntary manslaughter in violation of Section 192 or an attempt to commit voluntary manslaughter.~~

~~(D) Felony spousal abuse in violation of Section 273.5.~~

~~(E) Aggravated sexual assault of a child in violation of Section 269.~~

~~(F) A felony offense of assault or battery in violation of Section 217.1, 220, 241.1, 243, 243.1, 243.3, 243.4, 243.7, 244, 245, 245.2, 245.3, or 245.5.~~

~~(G) Kidnapping in violation of subdivisions (a) to (e), inclusive, of Section 207, or Section 208, 209, 209.5, or 210, or an attempt to commit any of these offenses.~~

~~(H) Mayhem in violation of Section 203 or aggravated mayhem in violation of Section 205, or an attempt to commit either of these offenses.~~

~~(I) Torture in violation of Section 206 or an attempt to commit torture.~~

~~(J) Burglary as defined in subdivision (a) of Section 460 or an attempt to commit this offense.~~

~~(K) Robbery as defined in subdivision (a) or (b) of Section 212.5 or an attempt to commit either of these offenses.~~

~~(L) Arson in violation of subdivision (a) or (b) of Section 451 or an attempt to commit either of these offenses.~~

~~(M) Carjacking in violation of Section 215 or an attempt to commit this offense.~~

~~(N) Terrorist activity in violation of Section 11418 or 11419, or a felony violation of Section 11418.5, or an attempt to commit any of these offenses.~~

*(2) Any adult person who is arrested for or charged with any of the following felony offenses:*

*(A) Any felony offense specified in Section 290 or attempt to commit any felony offense described in Section 290, or any felony offense that imposes upon a person the duty to register in California as a sex offender under Section 290.*

*(B) Murder or voluntary manslaughter or any attempt to commit murder or voluntary manslaughter.*

*(C) Commencing on January 1 of the fifth year following enactment of the act that added this subparagraph, as amended, any adult person arrested or charged with any felony offense.*

~~(2)~~ *(3)* Any person, *including any juvenile,* who is required to register under Section 290 *or 457.1* because of the commission of, or the attempt to commit, a felony *or misdemeanor* offense ~~specified in Section 290~~, *or any person, including any juvenile, who is housed in a mental health facility or sex offender treatment program after referral to such facility or program by a court after being charged with any felony offense* ~~and who is committed to any institution under the jurisdiction of the Department of the Youth Authority where he or she was confined, or is granted probation, or is or was committed to a state hospital as a mentally disordered sex offender under Article 1 (commencing with Section 6300) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code, shall be required to provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand to that institution or, in the case of a person granted probation, to a person and at a location within the county designated for testing~~ .

*(4) The term "felony" as used in this subdivision includes an attempt to commit the offense.*

*(5) Nothing in this chapter shall be construed as prohibiting collection and analysis of specimens, samples, or print impressions as a condition of a plea for a non-qualifying offense.*

*(b) The provisions of this chapter and its requirements for submission of specimens, samples and print impressions as soon as administratively practicable shall apply to all qualifying persons regardless of sentence imposed, including any sentence of death, life without the possibility of parole, or any life or indeterminate term, or any other disposition rendered in the case of an adult or juvenile tried as an adult, or whether the person is diverted, fined, or referred for evaluation, and regardless of disposition rendered or placement made in the case of juvenile who is found to have committed any felony offense or is adjudicated under Section 602 of the Welfare and Institutions Code.*

~~(b)~~ *(c)* The provisions of this chapter and its requirements for submission ~~to testing~~ *of specimens, samples, and print impressions* as soon as administratively practicable ~~to provide specimens, samples, and print impressions~~ *by qualified persons* as described in subdivision (a) shall apply regardless of placement or confinement in any mental hospital or other public or private treatment facility, and shall include, but not be limited to, the following persons, including juveniles:

(1) Any person committed to a state hospital or other treatment facility as a mentally disordered sex offender under Article 1 (commencing with Section 6300) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code.

(2) Any person who has a severe mental disorder as set forth within the provisions of Article 4 (commencing with Section 2960) of Chapter 7 of Title 1 of Part 3 of the Penal Code.



(3) Any person found to be a sexually violent predator pursuant to Article 4 (commencing with Section 6600) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code.

~~(c)~~ *(d)* The provisions of this chapter are mandatory and apply whether or not the court advises a person, including any juvenile, that he or she must provide the ~~databank~~ *data bank* and database specimens, samples, and print impressions as a condition of probation, parole, or any plea of guilty, no contest, or not guilty by reason of insanity, *or any admission* to any of the offenses described in subdivision (a).

~~(d) At sentencing or disposition, the prosecuting attorney shall verify in writing that the requisite samples are required by law, and that they have been taken, or are scheduled to be taken before the offender is released on probation, or other scheduled release. However, a failure by the prosecuting attorney or any other law enforcement agency to verify sample requirement or collection shall not relieve a person of the requirement to provide samples.~~

*(e) If at any stage of court proceedings the prosecuting attorney determines that specimens, samples, and print impressions required by this chapter have not already been taken from any person, as defined under subdivision (a) of Section 296, the prosecuting attorney shall notify the court orally on the record, or in writing, and request that the court order collection of the specimens, samples, and print impressions required by law. However, a failure by the prosecuting attorney or any other law enforcement agency to notify the court shall not relieve a person of the obligation to provide specimens, samples, and print impressions pursuant to this chapter.*

~~(e)~~ *(f) Prior to final disposition or sentencing in the case the court shall inquire and verify that the specimens, samples, and print impressions required by this chapter have been obtained and that this fact is included in the abstract of judgment or dispositional order in the case of a juvenile.* The abstract of judgment issued by the court shall indicate that the court has ordered the person to comply with the requirements of this chapter and that the person shall be included in the state's DNA and Forensic Identification Data Base and Data Bank program and be subject to this chapter.

However, failure by the court to *verify specimen, sample, and print impression collection or* enter these facts in the abstract of judgment *or dispositional order in the case of a juvenile* shall not invalidate ~~a~~ *an* arrest, plea, conviction, or disposition, or otherwise relieve a person from the requirements of this chapter.

SEC. 4. Section 296.1 of the Penal Code is amended to read:

296.1. *(a) The specimens, samples, and print impressions required by this chapter shall be collected from persons described in subdivision (a) of Section 296 for present and past qualifying offenses of record as follows:*

*(1) Collection from any adult person following arrest for a felony offense as specified in subparagraphs (A), (B), and (C) of paragraph (2) of subdivision (a) of Section 296:*

*(A) Each adult person arrested for a felony offense as specified in subparagraphs (A), (B), and (C) of paragraph (2) of subdivision (a) of Section 296 shall provide the buccal swab samples and thumb and palm print impressions and any blood or other specimens required pursuant to this chapter immediately following arrest, or during the booking or intake or reception center process or as soon as administratively practicable after arrest, but, in any case, prior to release on bail or pending trial or any physical release from confinement or custody.*

*(B) If the person subject to this chapter did not have specimens, samples, and print impressions taken immediately following arrest or during booking or intake procedures or is released on bail or pending trial or is not confined or incarcerated at the time of sentencing or otherwise bypasses a prison inmate reception center maintained by the Department of Corrections, the court shall order the person to report within five calendar days to a county jail facility or to a city, state, local, private, or other designated facility to provide the required specimens, samples, and print impressions in accordance with subdivision (i) of Section 295.*

*(2) Collection from persons confined or in custody after conviction or adjudication:*

*(A) Any person, including any juvenile who is imprisoned or confined or placed in a state correctional institution, a county jail, a facility within the jurisdiction of the Department of the Youth Authority, the Board of Corrections, a residential treatment program, or any state, local, city, private, or other facility after a conviction of any felony or* *misdemeanor offense, or any adjudication or disposition rendered in the case of a juvenile, whether or not that crime or offense is one set forth in subdivision (a) of Section 296, shall provide buccal swab samples and thumb and palm print impressions and any blood or other specimens required pursuant to this chapter, immediately at intake, or during the prison reception center process, or as soon as administratively practicable at the appropriate custodial or receiving institution or placed in program if:*

*(i) The person has a record of any past or present conviction or adjudication as a ward of the court in California of a qualifying offense described in subdivision (a) of Section 296 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296; and*

*(ii) The person's blood specimens, buccal swab samples, and thumb and palm print impressions authorized by this chapter are not in the possession of the Department of Justice DNA Laboratory or have not been recorded as part of the department's DNA data bank program.*

*(3) Collection from persons on probation, parole, or other release:*

*(A) Any person, including any juvenile, who has a record of any past or present conviction or adjudication for an offense set forth in subdivision (a) of Section 296, and who is on probation or parole for any felony or misdemeanor offense, whether or not that crime or offense is one set forth in subdivision (a) of Section 296, shall provide buccal swab samples and thumb and palm print impressions and any blood specimens required pursuant to this chapter, if:*

*(i) The person has a record of any past or present conviction or adjudication as a ward of the court in California of a qualifying offense described in subdivision (a) of Section 296 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296; and*

*(ii) The person's blood specimens, buccal swab samples, and thumb and palm print impressions authorized by this chapter are not in the possession of the Department of Justice DNA Laboratory or have not been recorded as part of the department's DNA data bank program.*

*(B) The person shall have any required specimens, samples, and print impressions collected within five calendar days of being notified by the court, or a law enforcement agency or other agency authorized by the Department of Justice. The specimens, samples, and print impressions shall be collected in accordance with subdivision (i) of Section 295 at a county jail facility or a city, state, local, private, or other facility designated for this collection.*

*(4) Collection from parole violators and others returned to custody:*

*(A) If a person, including any juvenile, who has been released on parole, furlough, or other release for any offense or crime, whether or not set forth in subdivision (a) of Section 296, is returned to a state correctional or other institution for a violation of a condition of his or her parole, furlough, or other release, or for any other reason, that person shall provide buccal swab samples and thumb and palm print impressions and any blood or other specimens required pursuant to this chapter, at a state correctional or other receiving institution, if:*

*(i) The person has a record of any past or present conviction or adjudication as a ward of the court in California of a qualifying offense described in subdivision (a) of Section 296 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296; and*

*(ii) The person's blood specimens, buccal swab samples, and thumb and palm print impressions authorized by this chapter are not in the possession of the Department of Justice DNA Laboratory or have not been recorded as part of the department's DNA data bank program.*

*(5) Collection from persons accepted into California from other jurisdictions:*

*(A) When an offender from another state is accepted into this state under any of the interstate compacts described in Article 3 (commencing with Section 11175) or Article 4 (commencing with Section 11189) of Chapter 2 of Title 1 of Part 4 of this code, or Chapter 4 (commencing with Section 1300) of Part 1 of Division 2 of the Welfare and*

*Institutions Code, or under any other reciprocal agreement with any county, state, or federal agency, or any other provision of law, whether or not the offender is confined or released, the acceptance is conditional on the offender providing blood specimens, buccal swab samples, and palm and thumb print impressions pursuant to this chapter, if the offender has a record of any past or present conviction or adjudication in California of a qualifying offense described in subdivision (a) of Section 296 or has a record of any past or present conviction or adjudication or had a disposition rendered in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296.*

*(B) If the person is not confined, the specimens, samples, and print impressions required by this chapter must be provided within five calendar days after the person reports to the supervising agent or within five calendar days of notice to the person, whichever occurs first. The person shall report to a county jail facility in the county where he or she resides or temporarily is located to have the specimens, samples, and print impressions collected pursuant to this chapter. The specimens, samples, and print impressions shall be collected in accordance with subdivision (i) of Section 295.*

*(C) If the person is confined, he or she shall provide the blood specimens, buccal swab samples, and thumb and palm print impressions required by this chapter as soon as practicable after his or her receipt in a state, county, city, local, private, or other designated facility.*

*(6) Collection from persons in federal institutions:*

*(A) Subject to the approval of the Director of the FBI, persons confined or incarcerated in a federal prison or federal institution who have a record of any past or present conviction or juvenile adjudication for a qualifying offense described in subdivision (a) of Section 296, or of a similar crime under the laws of the United States or any other state that would constitute an offense described in subdivision (a) of Section 296, are subject to this chapter and shall provide blood specimens, buccal swab samples, and thumb and palm print impressions pursuant to this chapter if any of the following apply:*

*(i) The person committed a qualifying offense in California.*

*(ii) The person was resident of California at the time of the qualifying offense.*

*(iii) The person has any record of a California conviction for an offense described in subdivision (a) of Section 296, regardless of when the crime was committed.*

*(iv) The person will be released in California.*

*(B) The Department of Justice DNA Laboratory shall, upon the request of the United States Department of Justice, forward portions of the specimens or samples, taken pursuant to this chapter, to the United States Department of Justice DNA data bank laboratory. The specimens and samples required by this chapter shall be taken in accordance with the procedures set forth in subdivision (i) of Section 295. The Department of Justice DNA Laboratory is authorized to analyze and upload specimens and samples collected pursuant to this section upon approval of the Director of the FBI.*

*(b) Retroactive application of paragraphs (1), (2), (3), (4), (5), and (6) of subdivision (a).*

*(1) Subdivision (a) and all of its paragraphs shall have retroactive application. Collection shall occur pursuant to paragraphs (1), (2), (3), (4), (5), and (6) of subdivision (a) regardless of when the crime charged or committed became a qualifying offense pursuant to this chapter, and regardless of when the person was convicted of the qualifying offense described in subdivision (a) of Section 296 or a similar crime under the laws of the United States or any other state, or pursuant to the United States Code of Military Justice, 10 U.S.C., Sections 801 and following, or when disposition was rendered in the case of a juvenile who is adjudged a ward of the court for commission of a qualifying offense described in subdivision (a) of Section 296 or a similar crime under the laws of the United States or any other state.*

~~(a) Any person, including any juvenile, who comes within the provisions of this chapter for an offense set forth in subdivision (a) of Section 296, and who is granted probation, or serves his or her entire term of confinement in a county jail, or is not sentenced to a term of confinement in a state prison facility, or otherwise bypasses a prison inmate reception center maintained by the Department of Corrections, shall, as soon as administratively practicable, but in any case, prior to physical release from custody, be required to provide two specimens of blood, a saliva sample, and thumb and palm print impressions as set forth in subdivision (a) of Section 296, at a county jail facility or other state, local, or private facility designated for the collection of these specimens, samples, and print impressions, in accordance with subdivision (f) of Section 295.~~

~~If the person subject to this chapter is not incarcerated at the time of sentencing, the court shall order the person to report within five calendar days to a county jail facility or other state, local, or private facility designated for the collection of specimens, samples, and print impressions to provide these specimens, samples, and print impressions in accordance with subdivision (f) of Section 295.~~

~~(b) If a person who comes within the provisions of this chapter for an offense set forth in subdivision (a) of Section 296 is sentenced to serve a term of imprisonment in a state correctional institution, the Director of Corrections shall collect the blood specimens, saliva samples, and thumb and palm print impressions required by this chapter from the person during the intake process at the reception center designated by the director, or as soon as administratively practicable thereafter at a receiving penal institution.~~

~~(c) Any person, including, but not limited to, any juvenile and any person convicted and sentenced to death, life without the possibility of parole, or any life or indeterminate term, who is imprisoned or confined in a state correctional institution, a county jail, a facility within the jurisdiction of the Department of the Youth Authority, or any other state, local, or private facility after a conviction of any crime, or disposition rendered in the case of a juvenile, whether or not that crime or offense is one set forth in subdivision (a) of Section 296, shall provide two specimens of blood, a saliva sample, and thumb and palm print impressions pursuant to this chapter, as soon as administratively practicable once it has been determined that both of the following apply:~~

~~(1) The person has been convicted or adjudicated a ward of the court in California of a qualifying offense described in subdivision (a) of Section 296 or has been convicted or had a disposition rendered in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296.~~

~~(2) The person's blood specimens, saliva samples, and thumb and palm print impressions authorized by this chapter are not in the possession of the Department of Justice DNA Laboratory as part of the DNA data bank program.~~

~~This subdivision applies regardless of when the person was convicted of the qualifying offense described in subdivision (a) of Section 296 or a similar crime under the laws of the United States or any other state, or when disposition was rendered in the case of a juvenile who is adjudged a ward of the court for commission of a qualifying offense described in subdivision (a) of Section 296 or a similar crime under the laws of the United States or any other state.~~

~~(d) Any person, including any juvenile, who comes within the provisions of this chapter for an offense set forth in subdivision (a) of Section 296, and who is on probation or parole, shall be required to provide two specimens of blood, a saliva sample, and thumb and palm print impressions as required pursuant to this chapter, if it is determined that the person has not previously provided these specimens, samples, and print impressions to law enforcement, or if it is determined that these specimens, samples, and print impressions are not in the possession of the Department of Justice. The person shall have the specimens, samples, and print impressions collected within five calendar days of being notified by a law enforcement agency or other agency authorized by the Department of Justice. The specimens, samples, and print impressions shall be collected in accordance with subdivision (f) of Section 295 at a county jail facility or other state, local, or private facility designated for this collection.~~

~~This subdivision shall apply regardless of when the crime committed became a qualifying offense pursuant to this chapter.~~

~~(e) When an offender from another state is accepted into this state under any of the interstate compacts described in Article 3 (commencing with Section 11175) or Article 4 (commencing with Section 1189) of Chapter 2 of Title 1 of Part 4 of this code, or Chapter 4 (commencing with Section 1300) of Part 1 of Division 2 of the Welfare and Institutions Code, or under any other reciprocal agreement with any county, state or federal agency, or any other provision of law, whether or not the offender is confined or released, the acceptance is conditional on the offender providing blood specimens, saliva samples, and palm and thumb print impressions pursuant to this chapter, if the offender was convicted of an offense which would qualify as a crime described in subdivision (a) of Section 296, or if the person was con-~~

~~victed of a similar crime under the laws of the United States, or any other state.~~

~~If the person is not confined, the specimens, samples, and print impressions required by this chapter must be provided within five calendar days after the offender reports to the supervising agent or within five calendar days of notice to the offender, whichever occurs first. The person shall report to a county jail facility in the county where he or she resides or temporarily is located to have the specimens, samples, and print impressions collected pursuant to this chapter. The specimens, samples, and print impressions shall be collected in accordance with subdivision (f) of Section 295.~~

~~If the person is confined, he or she shall provide the blood specimens, saliva samples, and thumb and palm print impressions required by this chapter as soon as practicable after his or her receipt in a state, county, local, private, or other facility.~~

~~(f) Subject to the approval of the Director of the Federal Bureau of Investigation, persons confined or incarcerated in a federal prison or federal institution located in California who are convicted of a qualifying offense described in subdivision (a) of Section 296 or of a similar crime under the laws of the United States or any other state that would constitute an offense described in subdivision (a) of Section 296, are subject to this chapter and shall provide blood specimens, saliva samples, and thumb and palm print impressions pursuant to this chapter if any of the following apply:~~

~~(1) The person committed a qualifying offense in California.~~

~~(2) The person was a resident of California at the time of the qualifying offense.~~

~~(3) The person has any record of a California conviction for a sex or violent offense described in subdivision (a) of Section 296, regardless of when the crime was committed.~~

~~(4) The person will be released in California.~~

~~Once a federal data bank is established and accessible to the Department of Justice, the Department of Justice DNA Laboratory shall, upon the request of the United States Department of Justice, forward the samples taken pursuant to this chapter, with the exception of those taken from suspects pursuant to subdivision (b) of Section 297, to the United States Department of Justice DNA data bank laboratory. The samples and impressions required by this chapter shall be taken in accordance with the procedures set forth in subdivision (f) of Section 295.~~

~~(g) If a person who is released on parole, furlough, or other release, is returned to a state correctional institution for a violation of a condition of his or her parole, furlough, or other release, and is serving or at any time has served a term of imprisonment for committing an offense described in subdivision (a) of Section 296, and he or she did not provide specimens, samples, and print impressions pursuant to the state's DNA data bank program, the person shall submit to collection of blood specimens, saliva samples, and thumb and palm print impressions at a state correctional institution.~~

~~This subdivision applies regardless of the crime or Penal Code violation for which a person is returned to a state correctional institution and regardless of the date the qualifying offense was committed.~~

SEC. 5. Section 297 of the Penal Code is amended to read:

297. (a) *(1)* The laboratories of the Department of Justice that are accredited by the American Society of Crime Laboratory Directors Laboratory Accreditation Board (ASCLD/LAB) or any certifying body approved by the ASCLD/LAB, and any *law enforcement* crime laboratory designated by the Department of Justice that is accredited by the ASCLD/LAB or any certifying body approved by the ASCLD/LAB, are authorized to analyze crime scene samples and other samples of known and unknown origin and to compare and check the forensic identification profiles, including DNA profiles, of these samples against available DNA and forensic identification data banks and ~~data bases~~ *databases* in order to establish identity and origin of samples for identification purposes.

*(2) Laboratories, including law enforcement laboratories, that are accredited by ASCLD/LAB or any certifying body approved by the ASCLD/LAB that contract with the Department of Justice pursuant to Section 298.3 are authorized to perform anonymous analysis of specimens and samples for forensic identification as provided in this chapter.*

~~(b) (1) Except as provided in paragraph (2), a biological sample taken in the course of a criminal investigation, either voluntarily or by court order, from a person who has not been convicted, may only be compared to samples taken from that specific criminal investigation and may not be compared to any other samples from any other criminal investigation without a court order.~~

~~(2) A biological sample obtained from a suspect, as defined in paragraph (3), in a criminal investigation may be analyzed for forensic identification profiles, including DNA profiles so that the profile can be placed in a suspect data base file and searched against the DNA data bank profiles of case evidence. For the purposes of this subdivision, the DNA data bank comparison of suspect and evidence profiles may be made, by the DNA Laboratory of the Department of Justice, or any crime laboratory designated by the Department of Justice that is accredited by the ASCLD/LAB or any certifying body approved by the ASCLD/LAB.~~

~~(3) For the purposes of this subdivision, "a suspect" means a person against whom an information or indictment has been filed for one of the crimes listed in subdivision (a) of Section 296. For the purposes of this subdivision, a person shall remain a suspect for two years from the date of the filing of the information or indictment or until the DNA laboratory receives notification that the person has been acquitted of the charges or the charges were dismissed.~~

(b) *(1) A biological sample obtained from a suspect in a criminal investigation for the commission of any crime may be analyzed for forensic identification profiles, including DNA profiles, by the DNA Laboratory of the Department of Justice or any law enforcement crime laboratory accredited by the ASCLD/LAB or any certifying body approved by the ASCLD/LAB and then compared by the Department of Justice in and between as many cases and investigations as necessary, and searched against the forensic identification profiles, including DNA profiles, stored in the files of the Department of Justice DNA data bank or database or any available data banks or databases as part of the Department of Justice DNA Database and Data Bank Program.*

*(2) The law enforcement investigating agency submitting a specimen, sample, or print impression to the DNA Laboratory of the Department of Justice or law enforcement crime laboratory pursuant to this section shall inform the Department of Justice DNA Laboratory within two years whether the person remains a suspect in a criminal investigation. Upon written notification from a law enforcement agency that a person is no longer a suspect in a criminal investigation, the Department of Justice DNA Laboratory shall remove the suspect sample from its data bank files. However, any identification, warrant, arrest, or prosecution based upon a data bank or database match shall not be invalidated or dismissed due to a failure to purge or delay in purging records.*

(c) All laboratories, including the Department of Justice DNA laboratories, contributing DNA profiles for inclusion in California's DNA Data Bank shall be accredited by the ASCLD/LAB or any certifying body approved by the ASCLD/LAB. Additionally, each laboratory shall submit to the Department of Justice for review the annual report required by the ASCLD/LAB or any certifying body approved by the ASCLD/LAB which documents the laboratory's adherence to ASCLD/LAB standards or the standards of any certifying body approved by the ASCLD/LAB. The requirements of this subdivision ~~apply to California laboratories only and~~ do not preclude DNA profiles developed in California from being searched in the National DNA ~~Data Base~~ *Database or Data Bank* (CODIS).

(d) Nothing in this section precludes *local law enforcement DNA* laboratories ~~meeting Technical Working Group on DNA Analysis Methods (TWGDAM) or Scientific Working Group on DNA Analysis Methods (SWGDAM) guidelines or standards promulgated by the DNA Advisory Board as established pursuant to Section 14131 of Title 42 of the United States Code,~~ from *maintaining local forensic databases and data banks or* performing forensic identification analyses, including DNA profiling, ~~independent of~~ *independently* from the Department of Justice DNA and Forensic Identification Data Base and Data Bank ~~program~~ *Program*.

(e) *The limitation on the types of offenses set forth in subdivision (a) of Section 296 as subject to the collection and testing procedures of this chapter is for the purpose of facilitating the administration of this chapter by the Department of Justice, and shall not be considered cause for dismissing an investigation or prosecution or reversing a verdict or disposition.*

(f) The detention, arrest, wardship, *adjudication,* or conviction of a person based upon a data bank match or ~~data base~~ *database* information is not invalidated if it is ~~later~~ determined that the specimens, samples, or print impressions were obtained or placed *or retained* in a data bank or ~~data base~~ *database* by mistake.

SEC. 6. Section 298 of the Penal Code is amended to read:

298. (a) The Director of Corrections, or the Chief Administrative Officer of the detention facility, jail, or other facility at which the blood specimens, ~~saliva~~ *buccal swab* samples, and thumb and palm print impressions were collected shall cause these specimens, samples, and print impressions to be forwarded promptly to the Department of Justice. The specimens, samples, and print impressions shall be collected by a person using a Department of Justice approved collection kit and in accordance with the requirements and procedures set forth in subdivision (b).

(b) (1) The Department of Justice shall provide all blood specimen vials, *buccal swab collectors,* mailing tubes, labels, and instructions for the collection of the blood specimens, ~~saliva~~ *buccal swab* samples, and thumbprints. The specimens, samples, and thumbprints shall thereafter be forwarded to the DNA Laboratory of the Department of Justice for analysis of DNA and other forensic identification markers.

Additionally, the Department of Justice shall provide all full palm print cards, mailing envelopes, and instructions for the collection of full palm prints. The full palm prints, on a form prescribed by the Department of Justice, shall thereafter be forwarded to the Department of Justice for maintenance in a file for identification purposes.

(2) The withdrawal of blood shall be performed in a medically approved manner. Only health care providers trained and certified to draw blood may withdraw the blood specimens for purposes of this section.

*(3) Buccal swab samples may be procured by law enforcement or corrections personnel or other individuals trained to assist in buccal swab collection.*

~~(3)~~ *(4)* Right thumbprints and a full palm print impression of each hand shall be taken on forms prescribed by the Department of Justice. The palm print forms shall be forwarded to and maintained by the Bureau of Criminal Identification and Information of the Department of Justice. Right thumbprints also shall be taken at the time of the ~~withdrawal~~ *collection* of ~~blood~~ *samples and specimens* and shall be placed on the *sample and specimen containers and* forms *as directed by the Department of Justice* ~~and the blood vial label~~. The ~~blood vial~~ *samples, specimens, and forms* ~~and thumbprint forms~~ shall be forwarded to and maintained by the DNA Laboratory of the Department of Justice.

*(5) The law enforcement or custodial agency collecting specimens, samples, or print impressions is responsible for confirming that the person qualifies for entry into the Department of Justice DNA Database and Data Bank Program prior to collecting the specimens, samples, or print impressions pursuant to this chapter.*

~~(4)~~ *(6)* The DNA Laboratory of the Department of Justice is responsible for establishing procedures for entering data bank and ~~database~~ *database* information. ~~The DNA laboratory procedures shall confirm that the offender qualifies for entry into the DNA data bank prior to actual entry of the information in to the DNA data bank.~~

(c) (1) Persons authorized to draw blood *or obtain samples or print impressions* under this chapter for the data bank or ~~data base~~ *database* shall not be civilly or criminally liable either for withdrawing blood when done in accordance with medically accepted procedures, or for obtaining ~~saliva~~ *buccal swab* samples *by scraping inner cheek cells of the mouth,* or thumb or palm print impressions when performed in accordance with standard professional practices.

(2) There is no civil or criminal cause of action against any law enforcement agency or the Department of Justice, or any employee thereof, for a mistake in *confirming a person's or sample's qualifying status for inclusion within the database or data bank or in* placing an entry in a data bank or a ~~data base~~ *database* .

*(3) The failure of the Department of Justice or local law enforcement to comply with Article 4 or any other provision of this chapter shall not invalidate an arrest, plea, conviction, or disposition.*

SEC. 7. Section 298.2 is added to the Penal Code, to read:

*298.2. (a) Any person who is required to submit a specimen sample or print impression pursuant to this chapter who engages or attempts to engage in any of the following acts is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years:*

*(1) Knowingly facilitates the collection of a wrongfully attributed blood specimen, buccal swab sample, or thumb or palm print impression, with the intent that a government agent or employee be deceived as to the origin of a DNA profile or as to any identification information associated with a specimen, sample, or print impression required for submission pursuant to this chapter.*

*(2) Knowingly tampers with any specimen, sample, print, or the collection container for any specimen or sample, with the intent that any government agent or employee be deceived as to the identity of the person to whom the specimen, sample, or print relates.*

SEC. 8. Section 298.3 is added to the Penal Code, to read:

*298.3. (a) To ensure expeditious and economical processing of offender specimens and samples for inclusion in the FBI's CODIS System and the state's DNA Database and Data Bank Program, the Department of Justice DNA Laboratory is authorized to contract with other laboratories, whether public or private, including law enforcement laboratories, that have the capability of fully analyzing offender specimens or samples within 60 days of receipt, for the anonymous analysis of specimens and samples for forensic identification testing as provided in this chapter and in accordance with the quality assurance requirement established by CODIS and ASCLD/LAB.*

*(b) Contingent upon the availability of sufficient funds in the state's DNA Identification Fund established pursuant to Section 76104.6, the Department of Justice DNA Laboratory shall immediately contract with other laboratories, whether public or private, including law enforcement laboratories, for the anonymous analysis of offender reference specimens or samples and any arrestee reference specimens or samples collected pursuant to subdivision (a) of Section 296 for forensic identification testing as provided in subdivision (a) of this section and in accordance with the quality assurance requirements established by CODIS and ASCLD/LAB for any specimens or samples that are not fully analyzed and uploaded into the CODIS database within six months of the receipt of the reference specimens or samples by the Department of Justice DNA Laboratory.*

SEC. 9. Section 299 of the Penal Code is amended to read:

299. ~~(a) A person whose DNA profile has been included in the data bank pursuant to this chapter shall have his or her information and materials expunged from the data bank when the underlying conviction or disposition serving as the basis for including the DNA profile has been reversed and the case dismissed, the defendant has been found factually innocent of the underlying offense pursuant to Section 851.8, the defendant has been found not guilty, or the defendant has been acquitted of the underlying offense. The court issuing the reversal, dismissal, or acquittal shall order the expungement and shall send a copy of that order to the Department of Justice DNA Laboratory Director. Upon receipt of the court order, the Department of Justice shall expunge all identifiable information in the data bank and any criminal identification records pertaining to the person.~~

*(a) A person whose DNA profile has been included in the data bank pursuant to this chapter shall have his or her DNA specimen and sample destroyed and searchable database profile expunged from the data bank program pursuant to the procedures set forth in subdivision (b) if the person has no past or present offense or pending charge which qualifies that person for inclusion within the state's DNA and Forensic Identification Database and Data Bank Program and there otherwise is no legal basis for retaining the specimen or sample or searchable profile.*

*(b)* ~~(1) A person whose DNA profile has been included in a data bank pursuant to this chapter~~ *Pursuant to subdivision (a), a person who has no past or present qualifying offense, and for whom there otherwise is no legal basis for retaining the specimen or sample or searchable profile,* may make a written request to ~~expunge information and materials from the data bank.~~ *have his or her specimen and sample destroyed and searchable database profile expunged from the data bank program if:*

*(1) Following arrest, no accusatory pleading has been filed within the applicable period allowed by law charging the person with a qualifying offense as set forth in subdivision (a) of Section 296 or if the charges which served as the basis for including the DNA profile in the state's DNA Database and Data Bank Identification Program have been dismissed prior to adjudication by a trier of fact;*

*(2) The underlying conviction or disposition serving as the basis for including the DNA profile has been reversed and the case dismissed;*

*(3) The person has been found factually innocent of the underlying offense pursuant to Section 851.8, or Section 781.5 of the Welfare and Institutions Code; or*



(4) The defendant has been found not guilty or the defendant has been acquitted of the underlying offense.

(c) (1) The person requesting the data bank entry to be expunged must send a copy of his or her request to the trial court *of the county where the arrest occurred, or* that entered the conviction or rendered disposition in the case, to the DNA Laboratory of the Department of Justice, and to the prosecuting attorney of the county in which he or she was *arrested or,* convicted, *or adjudicated*, with proof of service on all parties. The court has the discretion to grant or deny the request for expungement. The denial of a request for expungement is a nonappealable order and shall not be reviewed by petition for writ.

(2) Except as provided below, the Department of Justice shall *destroy a specimen and sample and expunge the searchable DNA database profile* all identifiable information in the data bank and any criminal identification records pertaining to the person *who has no present or past qualifying offense of record* upon receipt of a court order that verifies the applicant has made the necessary showing at a noticed hearing, and that includes all of the following:

(A) The written request for expungement pursuant to this section.

(B) A certified copy of the court order reversing and dismissing the conviction *or case*, or a letter from the district attorney certifying that *no accusatory pleading has been filed or the charges which served as the basis for collecting a DNA specimen and sample have been dismissed prior to adjudication by a trier of fact,* the defendant has been found factually innocent, the defendant has been found not guilty, the defendant has been acquitted of the underlying offense, or the underlying conviction has been reversed and the case dismissed.

(C) Proof of written notice to the prosecuting attorney and the Department of Justice that expungement has been requested.

(D) A court order verifying that no retrial or appeal of the case is pending, that it has been at least 180 days since the defendant *or minor has* notified the prosecuting attorney and the Department of Justice of the expungement request, and that the court has not received an objection from the Department of Justice or the prosecuting attorney.

(c) *(d)* Upon order from the court, the Department of Justice shall destroy any specimen or sample collected from the person and any criminal identification records *searchable DNA database profile* pertaining to the person, unless the department determines that the person *is subject to the provisions of this chapter because of a past qualifying offense of record or is or* has otherwise become obligated to submit a blood specimen *or buccal swab sample* as a result of a separate *arrest,* conviction, juvenile adjudication, or finding of guilty or not guilty by reason of insanity for an offense described in subdivision (a) of Section 296, or as a condition of a plea.

The Department of Justice is not required to destroy an autoradiograph *analytical data* or other item *items* obtained from a blood specimen *or saliva, or buccal swab sample,* if evidence relating to another person subject to the provisions of this chapter would thereby be destroyed *or otherwise compromised*.

Any identification, warrant, probable cause to arrest, or arrest based upon a data bank *or database* match is not invalidated due to a failure to expunge or a delay in expunging records.

(d) The Department of Justice DNA Laboratory shall periodically review its files to determine whether its files contain DNA reference sample profiles from suspects as defined in subdivision (b) of Section 297 who are no longer eligible for inclusion in the data bank. The DNA profiles and samples stored in the suspect data base from a person who is a suspect in a criminal investigation shall be purged within two years of the date of the filing of the information or indictment or when the DNA laboratory receives notice that the suspect was acquitted or the charges against the suspect were dismissed, which ever occurs earlier. The notice shall include a certified copy of the court order dismissing the information or indictment, a certified copy of the defendant's fingerprints and the defendant's CII number.

(e) *Notwithstanding any other provision of law, the Department of Justice DNA Laboratory is not required to expunge DNA profile or forensic identification information or destroy or return specimens, samples, or print impressions taken pursuant to this section if the duty to register under Section 290 or 457.1 is terminated.*

(f) *Notwithstanding any other provision of law, including Sections 17, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide specimens, samples, or print impressions required by this chapter if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of* a qualifying offense as defined in subdivision (a) of Section 296, or was found not guilty by reason of insanity or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296.

Sec. 10. Section 299.5 of the Penal Code is amended to read:

299.5. (a) All DNA and forensic identification profiles and other identification information retained by the Department of Justice pursuant to this chapter are exempt from any law requiring disclosure of information to the public and shall be confidential except as otherwise provided in this chapter.

(b) All evidence and forensic samples containing biological material retained by the Department of Justice DNA Laboratory or other state law enforcement agency are exempt from any law requiring disclosure of information to the public or the return of biological specimens , *samples, or print impressions*.

(c) Non-DNA forensic identification information may be filed with the offender's file maintained by the Sex Registration Unit of the Department of Justice or in other computerized data bank *or database* systems maintained by the Department of Justice.

(d) The DNA and other forensic identification information retained by the Department of Justice pursuant to this chapter shall not be included in the state summary criminal history information. However, nothing in this chapter precludes law enforcement personnel from entering into a person's criminal history information or offender file maintained by the Department of Justice, the fact that the specimens, samples, and print impressions required by this chapter have or have not been collected from that person.

(e) The fact that the blood specimens, saliva *or buccal swab* samples, and print impressions required by this chapter have been received by the DNA Laboratory of the Department of Justice shall be included in the state summary criminal history information *as soon as administratively practicable*.

The full palm prints of each hand shall be filed and maintained by the Automated Latent Print Section of the Bureau of Criminal Identification and Information of the Department of Justice, and may be included in the state summary criminal history information.

(f) DNA *samples and DNA profiles* and other forensic identification information shall be released only to law enforcement agencies, including, but not limited to, parole officers of the Department of Corrections, hearing officers of the parole authority, probation officers, the Attorney General's office, district attorneys' offices, and prosecuting city attorneys' offices, or to a court or administrative tribunal, except as specified in *unless otherwise specifically authorized by* this chapter. Dissemination of this information *DNA specimens, samples, and DNA profiles and other forensic identification information* to law enforcement agencies and district attorneys' offices outside this state shall be performed in conformity with the provisions of this chapter.

(g) A defendant's DNA and other forensic identification information developed pursuant to this chapter shall be available to his or her defense counsel upon court order made pursuant to Chapter 10 (commencing with Section 1054) of Title 6 of Part 2.

*(h) Except as provided in subdivision (g) and in order to protect the confidentiality and privacy of database and data bank information, the Department of Justice and local public DNA laboratories shall not otherwise be compelled in a criminal or civil proceeding to provide any DNA profile or forensic identification database or data bank information or its computer database program software or structures to any person or party seeking such records or information whether by subpoena or discovery, or other procedural device or inquiry.*

(g) *(i)* (1) (A) Any person who knowingly uses an offender *specimen,* sample, or DNA profile *collected pursuant to this chapter* for other than criminal identification or exclusion purposes, *or for other than the identification of missing persons,* or who knowingly discloses DNA or other forensic identification information developed pursuant to this section to an unauthorized individual or agency, for other than criminal identification or exclusion purposes, *or for the identification of missing persons,* in violation of this chapter, shall be punished by imprisonment in a county jail not exceeding one year or by imprisonment in the state prison.

(B) Any person who, for the purpose of financial gain, knowingly uses an offender *a specimen,* sample, or DNA profile *collected pursuant to this chapter* for other than criminal identification or exclusion purposes or *for the identification of missing persons or* who, for the purpose of financial gain, knowingly discloses DNA or other forensic iden-


tification information developed pursuant to this section to an unauthorized individual or agency, for other than criminal identification or exclusion purposes *or for other than the identification of missing persons*, in violation of this chapter, shall, in addition to the penalty provided in subparagraph (A), be punished by a criminal fine in an amount three times that of any financial gain received or ten thousand dollars ($10,000), whichever is greater.

(2) (A) If any employee of the Department of Justice knowingly uses ~~an offender~~ *a specimen*, sample, or DNA profile *collected pursuant to this chapter* for other than criminal identification or exclusion purposes, or knowingly discloses DNA or other forensic identification information developed pursuant to this section to an unauthorized individual or agency, for other than criminal identification or exclusion purposes *or for other than the identification of missing persons*, in violation of this chapter, the department shall be liable in civil damages to the donor of the DNA identification information in the amount of five thousand dollars ($5,000) for each violation, plus attorney's fees and costs. In the event of multiple disclosures, the total damages available to the donor of the DNA is limited to fifty thousand dollars ($50,000) plus attorney's fees and costs.

(B) (i) Notwithstanding any other law, this shall be the sole and exclusive remedy against the Department of Justice and its employees available to the donor of the DNA.

(ii) The Department of Justice employee disclosing DNA identification information in violation of this chapter shall be absolutely immune from civil liability under this or any other law.

(3) It is not a violation of this section for a law enforcement agency *in its discretion* to publicly disclose the fact of a DNA profile match, *or the name of the person identified by the DNA match when this match is the basis of law enforcement's investigation, arrest, or prosecution of a particular person, or the identification of a missing or abducted person*.

~~(h)~~ *(j)* It is not a violation of this chapter to furnish DNA or other forensic identification information of the defendant to his or her defense counsel for criminal defense purposes in compliance with discovery.

~~(i)~~ *(k)* It is not a violation of this section *for law enforcement* to release DNA and other forensic identification information developed pursuant to this chapter to a jury or grand jury, or in a document filed with a court or administrative agency, or as part of a judicial or administrative proceeding, or for this information to become part of the public transcript or record of proceedings *when, in the discretion of law enforcement, disclosure is necessary because the DNA information pertains to the basis for law enforcement's identification, arrest, investigation, prosecution, or exclusion of a particular person related to the case*.

~~(j)~~ *(l)* It is not a violation of this section to include information obtained from a file in a transcript or record of a judicial proceeding, or in any other public record when the inclusion of the information in the public record is authorized by a court, statute, or decisional law.

~~(k)~~ *(m)* It is not a violation of this section for the DNA Laboratory of the Department of Justice, *or an organization retained as an agent of the Department of Justice*, or a local public laboratory to use anonymous ~~DNA~~ records *or criminal history information obtained pursuant to this chapter* for training, research, statistical analysis of populations, *or quality assurance* or quality control.

~~(l) It is not a violation of this section to disseminate statistical or research information obtained from the offender's file, the computerized databank system, any of the DNA laboratory's databases, or the full palm print file, provided that the subject of the file is not identified and cannot be identified from the information disclosed. All requests for statistical or research information obtained from the DNA databank shall be cataloged by the Department of Justice. Commencing January 1, 2000, the department shall submit an annual letter to the Legislature including, with respect to each request, the requester's name or agency, the purpose of the request, whether the request is related to a criminal investigation or court proceeding, whether the request was granted or denied, any reasons for denial, costs incurred or estimates of the cost of the request, and the date of the request.~~

~~(m)~~ *(n)* The Department of Justice shall make public the methodology and procedures to be used in its DNA program prior to the commencement of DNA testing in its laboratories. The Department of Justice shall review and consider on an ongoing basis the findings and results of any peer review and validation studies submitted to the department by members of the relevant scientific community experienced in the use of DNA technology. This material shall be available to criminal defense counsel upon court order made pursuant to Chapter 10 (commencing with Section 1054) of Title 6 of Part 2.

~~(n)~~ *(o)* In order to maintain the computer system security of the Department of Justice DNA and ~~forensic identification database and databank program~~ *Forensic Identification Database and Data Bank Program*, the computer software and database structures used by the DNA Laboratory of the Department of Justice to implement this chapter are confidential.

~~(o) Nothing in this section shall preclude a court from ordering discovery pursuant to Chapter 10 (commencing with Section 1054) of Title 6 of Part 2.~~

SEC. 11. Section 299.6 of the Penal Code is amended to read:

299.6. (a) Nothing in this chapter shall prohibit *the Department of Justice, in its sole discretion, from* the sharing or disseminating of population ~~data-base~~ *database* or data bank information, *DNA profile or forensic identification database or data bank information, analytical data and results generated for forensic identification database and data bank purposes, or protocol and forensic DNA analysis methods and quality assurance or quality control procedures* with any of the following:

(1) Federal, state, or local law enforcement agencies.

(2) Crime laboratories, whether public or private, that serve federal, state, and local law enforcement agencies that have been approved by the Department of Justice.

(3) The attorney general's office of any state.

*(4) Any state or federally authorized auditing agent or board that inspects or reviews the work of the Department of Justice DNA Laboratory for the purpose of ensuring that the laboratory meets ASCLD/LAB and FBI standards for accreditation and quality assurance standards necessary under this chapter and for the state's participation in CODIS and other national or international crime-solving networks.*

~~(4)~~ *(5)* Any third party that the Department of Justice deems necessary to assist the department's crime laboratory with statistical analyses of ~~the~~ population ~~data-base~~ *databases, or the analyses of forensic protocol, research methods, or quality control procedures,* or to assist in the recovery or identification of human remains for humanitarian purposes, including identification of missing persons.

~~(b) Nothing in this chapter shall prohibit the sharing or disseminating of protocol and forensic DNA analysis methods and quality control procedures with any of the following:~~

~~(1) Federal, state, or local law enforcement agencies.~~

~~(2) Crime laboratories, whether public or private, that serve federal, state, and local law enforcement agencies that have been approved by the Department of Justice.~~

~~(3) The attorney general's office of any state.~~

~~(4) Any third party that the Department of Justice deems necessary to assist the department's crime laboratory with analyses of forensic protocol, research methods, or quality control procedures.~~

~~(c)~~ *(b)* The population ~~data-base~~ *databases* and data ~~bank~~ *banks* of the DNA Laboratory of the Department of Justice may be made available to and searched by the FBI and any other agency participating in the FBI's CODIS System or any other national *or international* law enforcement *database or* data bank system.

~~(d)~~ *(c)* The Department of Justice may provide portions of ~~the~~ biological samples including blood specimens ~~and~~, saliva *samples, and buccal swab* samples collected pursuant to this chapter to local public *law enforcement* DNA laboratories for identification purposes provided that the privacy provisions of this section are followed by the local *public law enforcement* laboratory and if each of the following conditions is met:

(1) The procedures used by the local public DNA laboratory for the handling of specimens and samples and the disclosure of results are the same as those established by the Department of Justice pursuant to Sections 297, 298, and 299.5.

(2) The methodologies and procedures used by the local public DNA laboratory for DNA or forensic identification analysis are compatible with those ~~established~~ *used* by the Department of Justice ~~pursuant to subdivision (i) of Section 299.5~~, or otherwise are determined by the Department of Justice to be valid and appropriate for identification purposes.



(3) Only tests of value to law enforcement for identification purposes are performed and a copy of the results of the analysis are sent to the Department of Justice.

(4) All provisions of this section concerning privacy and security are followed.

(5) The local public *law enforcement* DNA laboratory assumes all costs of securing the specimens and samples and provides appropriate tubes, labels, and ~~instructions~~ *materials* necessary to secure the *specimens and* samples.

~~(c)~~ *(d)* Any local DNA laboratory that produces DNA profiles of known reference samples for inclusion within the permanent files of the state's DNA Data Bank program ~~shall comply with and be subject to all of the rules, regulations, and restrictions of this chapter and~~ shall follow the policies of the DNA Laboratory of the Department of Justice.

SEC. 12. Section 300 of the Penal Code is amended to read:

300. Nothing in this chapter shall limit or abrogate any existing authority of law enforcement officers to take, maintain, store, and utilize DNA or forensic identification markers, blood specimens, *buccal swab samples*, saliva samples, or thumb or palm print impressions for identification purposes.

SEC. 13. Section 300.1 of the Penal Code is amended to read:

300.1. *(a)* Nothing in this chapter shall be construed to restrict the authority of *local law enforcement to maintain their own DNA-related databases or data banks, or to restrict* the Department of Justice with respect to data banks and ~~data bases~~ *databases* created by other statutory authority, including, but not limited to, ~~data bases~~ *databases* related to fingerprints, firearms and other weapons, child abuse, domestic violence deaths, child deaths, driving offenses, missing persons, violent crime information as described in Title 12 (commencing with Section 14200) of Part 4, and criminal justice statistics permitted by Section 13305.

*(b) Nothing in this chapter shall be construed to limit the authority of local or county coroners or their agents, in the course of their scientific investigation, to utilize genetic and DNA technology to inquire into and determine the circumstances, manner, and cause of death, or to employ or use outside laboratories, hospitals, or research institutions that utilize genetic and DNA technology.*

SEC. 14. Section 300.2 is added to the Penal Code, to read:

*300.2. Any requirement to provide saliva samples pursuant to this chapter shall be construed as a requirement to provide buccal swab samples as of the effective date of the act that added this section. However, the Department of Justice may retain and use previously collected saliva and other biological samples as part of its database and databank program and for quality control purposes in conformity with the provisions of this chapter.*

SEC. IV. Supplemental Funding

SEC. 1. Section 76104.6 is added to the Government Code, to read:

*76104.6. (a) For the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, there shall be levied an additional penalty of one dollar for every ten dollars ($10) or fraction thereof in each county which shall be collected together with and in the same manner as the amounts established by Section 1464 of the Penal Code, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses, including all offenses involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code, except parking offenses subject to Article 3 (commencing with Section 40200) of Chapter 1 of Division 17 of the Vehicle Code. These moneys shall be taken from fines and forfeitures deposited with the county treasurer prior to any division pursuant to Section 1463 of the Penal Code. The board of supervisors shall establish in the county treasury a DNA Identification Fund into which shall be deposited the collected moneys pursuant to this section. The moneys of the fund shall be allocated pursuant to subdivision (b).*

*(b) (1) The fund moneys described in subdivision (a), together with any interest earned thereon, shall be held by the county treasurer separate from any funds subject to transfer or division pursuant to Section 1463 of the Penal Code. Deposits to the fund may continue through and including the 20th year after the initial calendar year in which the surcharge is collected, or longer if and as necessary to make payments upon any lease or leaseback arrangement utilized to finance any of the projects specified herein.*

*(2) On the last day of each calendar quarter of the year specified in this subdivision, the county treasurer shall transfer fund moneys in the county's DNA Identification Fund to the state Controller for credit to the state's DNA Identification Fund, which is hereby established in the State Treasury, as follows:*

*(A) in the first two calendar years following the effective date of this section, 70 percent of the amounts collected, including interest earned thereon;*

*(B) in the third calendar year following the effective date of this section, 50 percent of the amounts collected, including interest earned thereon;*

*(C) in the fourth calendar year following the effective date of this section and in each calendar year thereafter, 25 percent of the amounts collected, including interest earned thereon.*

*(3) Funds remaining in the county's DNA Identification Fund shall be used only to reimburse local sheriff or other law enforcement agencies to collect DNA specimens, samples, and print impressions pursuant to this chapter; for expenditures and administrative costs made or incurred to comply with the requirements of paragraph (5) of subdivision (b) of Section 298 including the procurement of equipment and software integral to confirming that a person qualifies for entry into the Department of Justice DNA Database and Data Bank Program; and to local sheriff, police, district attorney, and regional state crime laboratories for expenditures and administrative costs made or incurred in connection with the processing, analysis, tracking, and storage of DNA crime scene samples from cases in which DNA evidence would be useful in identifying or prosecuting suspects, including the procurement of equipment and software for the processing, analysis, tracking, and storage of DNA crime scene samples from unsolved cases.*

*(4) The state's DNA Identification Fund shall be administered by the Department of Justice. Funds in the state's DNA Identification Fund, upon appropriation by the Legislature, shall be used by the Attorney General only to support DNA testing in the state and to offset the impacts of increased testing and shall be allocated as follows:*

*(A) Of the amount transferred pursuant to subparagraph (A) of paragraph (2) of subdivision (b), 90 percent to the Department of Justice DNA Laboratory, first, to comply with the requirements of Section 298.3 of the Penal Code and, second, for expenditures and administrative costs made or incurred in connection with the processing, analysis, tracking, and storage of DNA specimens and samples including the procurement of equipment and software for the processing, analysis, tracking, and storage of DNA samples and specimens obtained pursuant to the DNA and Forensic Identification Database and Databank Act, as amended, and 10 percent to the Department of Justice Information Bureau Criminal History Unit for expenditures and administrative costs that have been approved by the Chief of the Department of Justice Bureau of Forensic Services made or incurred to update equipment and software to facilitate compliance with the requirements of subdivision (e) of Section 299.5 of the Penal Code.*

*(B) Of the amount transferred pursuant to subparagraph (B) of paragraph (2) of subdivision (b), funds shall be allocated by the Department of Justice DNA Laboratory, first, to comply with the requirements of Section 298.3 of the Penal Code and, second, for expenditures and administrative costs made or incurred in connection with the processing, analysis, tracking, and storage of DNA specimens and samples including the procurement of equipment and software for the processing, analysis, tracking, and storage of DNA samples and specimens obtained pursuant to the DNA and Forensic Identification Database and Databank Act, as amended.*

*(C) Of the amount transferred pursuant to subparagraph (C) of paragraph (2) of subdivision (b), funds shall be allocated by the Department of Justice to the DNA Laboratory to comply with the requirements of Section 298.3 of the Penal Code and for expenditures and administrative costs made or incurred in connection with the processing, analysis, tracking, and storage of DNA specimens and samples including the procurement of equipment and software for the processing, analysis, tracking, and storage of DNA samples and specimens obtained pursuant to the DNA and Forensic Identification Database and Databank Act, as amended.*

*(c) On or before April 1 in the year following adoption of this section, and annually thereafter, the board of supervisors of each county shall submit a report to the Legislature and the Department of Justice. The report shall include the total amount of fines collected and allocated pursuant to this section, and the amounts expended by the*

## Proposition 69 (cont.)

*county for each program authorized pursuant to paragraph (3) of subdivision (b) of this section. The Department of Justice shall make the reports publicly available on the department's Web site.*

*(d) All requirements imposed on the Department of Justice pursuant to the DNA Fingerprint, Unsolved Crime and Innocence Protection Act are contingent upon the availability of funding and are limited by revenue, on a fiscal year basis, received by the Department of Justice pursuant to this section and any additional appropriation approved by the Legislature for purposes related to implementing this measure.*

*(e) Upon approval of the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, the Legislature shall loan the Department of Justice General Fund in the amount of $7,000,000 for purposes of implementing that act. This loan shall be repaid with interest calculated at the rate earned by the Pooled Money Investment Account at the time the loan is made. Principal and interest on the loan shall be repaid in full no later than four years from the date the loan was made and shall be repaid from revenue generated pursuant to this section.*

SEC. V. General Provisions

(a) Conflicting Measures: If this measure is approved by the voters, but superseded by any other conflicting ballot measure approved by more voters at the same election, and the conflicting ballot measure is later held invalid, it is the intent of the voters that this measure shall be self-executing and be given the full force of the law.

(b) Severability: The provisions of this measure are severable. If any provision of this measure or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

(c) Amendment: The provisions of this measure may be amended by a statute that is passed by each house of the Legislature and signed by the Governor. All amendments to this measure shall be to further the measure and shall be consistent with its purposes to enhance the use of DNA identification evidence for the purpose of accurate and expeditious crime-solving and exonerating the innocent.

(d) Supplantation: All funds distributed to state or local governmental entities pursuant to this measure shall not supplant any federal, state, or local funds that would, in the absence of this measure, be made available to support law enforcement and prosecutorial activities.

## Proposition 70

This initiative measure is submitted to the people in accordance with the provisions of Section 8 of Article II of the California Constitution.

This initiative measure amends the California Constitution and adds a section to the Government Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

PROPOSED LAW

THE INDIAN GAMING FAIR-SHARE REVENUE ACT OF 2004

SECTION 1. Title

This act shall be known as the "Indian Gaming Fair-Share Revenue Act of 2004."

SEC. 2. Findings and Purpose

The people of the State of California hereby find and declare as follows:

(a) The purpose of the people of the State of California in enacting this measure is to provide a means for California Indian tribes to contribute their fair share of gaming revenues to the State of California. Both the people of California and California Indian tribal governments desire for tribes to assist in restoring financial integrity to the state by contributing an amount that is equivalent to what any private California corporation pays to the state on the net income it earns from its lawful business activities.

(b) In March 2000, the people of the State of California adopted Proposition 1A, which authorized the Governor to negotiate tribal-state gaming compacts with federally recognized Indian tribes for the operation of slot machines and certain casino games on tribal lands in California in accordance with federal law. Proposition 1A was enacted by the people in recognition of the fact that, historically, Indian tribes within the state have long suffered from high rates of unemployment and inadequate educational, housing, elderly care, and health care opportunities, while typically being located on lands that are not conducive to economic development in order to meet those needs.

(c) Since the adoption of Proposition 1A, over 50 Indian tribes have entered into tribal gaming compacts with the State of California. These compacts and the gaming facilities they authorize have assisted Indian tribes throughout the state to move towards economic self-sufficiency by providing a much-needed revenue source for various tribal purposes, including tribal government services and programs such as those that address reservation housing, elderly care, education, health care, roads, sewers, water systems, and other tribal needs. Tribal gaming has also spurred new development, has created thousands of jobs for Indians and non-Indians alike, and has had a substantial positive economic impact on the local communities in which these facilities are located.

(d) Under the existing tribal gaming compacts, Indian tribes also pay millions of dollars each year into two state special funds that are used to provide grants to local governments, to finance programs addressing gambling addiction, to reimburse the state for the costs of regulating tribal gaming, and to share gaming revenues with other Indian tribes in the state that do not operate gaming facilities. However, because Indian tribes are sovereign governments and are exempt from most forms of taxation, they do not pay any corporate income taxes directly to the state on the profits derived from their gaming operations.

(e) Given California's current fiscal crisis, the state needs to find new ways to generate revenues for the General Fund in the State Treasury. Indian tribes want to and should do their part to assist California in meeting its budget needs by contributing to the state a fair share of the net income they receive from gaming activities in recognition of their continuing right to operate tribal gaming facilities in an economic environment free of competition from casino-style gaming on non-Indian lands. A fair share for the Indian tribes to contribute to the state is an amount that is equivalent to the amount of corporate taxes that a private California corporation pays to the state on the net income it earns from its lawful business activities.

(f) Accordingly, in order to provide additional revenues to the State of California in this time of fiscal crisis, this measure authorizes and requires the Governor to enter into new or amended tribal gaming compacts under which the Indian tribes agree to contribute to the state a fair share of the net income derived from their gaming activities in exchange for the continued exclusive right to operate casino-style gaming facilities in California. In addition, in order to maximize revenues for the state and to permit the free market to determine the number and type of casino games and devices that will exist on tribal lands, this measure requires these new or amended compacts to allow each tribal government to choose the number and size of the gaming facilities it operates, and the types of games offered, that it believes will maximize the tribe's income, as long as the facilities are restricted to and are located in those areas that have been designated by both the State of California and the United States government as tribal lands. Under the new or amended compacts authorized by this measure, Indian tribes must also prepare environmental impact reports analyzing the off-reservation impacts of any proposed new or expanded gaming facilities, and they must consult with the public and local government officials to develop a good-faith plan to mitigate any significant adverse environmental impacts.

SEC. 3. Section 19 of Article IV of the California Constitution is amended to read:

SEC. 19. (a) The Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State.

(b) The Legislature may provide for the regulation of horse races and horse race meetings and wagering on the results.

(c) Notwithstanding subdivision (a), the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes.

(d) Notwithstanding subdivision (a), there is authorized the establishment of a California State Lottery.

