EDMUND G. BROWN JR.
Attorney General of California
CONSTANCE L. LELOUIS
Supervising Deputy Attorney General
ENID A. CAMPS
Deputy Attorney General
State Bar No. 113183
DANIEL J. POWELL
Deputy Attorney General
State Bar No. 230304
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5830
 Fax:  (415) 703-1234
 E-mail:  Daniel.Powell@doj.ca.gov
*Attorneys for Defendants Edmund G. Brown Jr.,
Attorney General of California, and Eva
Steinberger, Assistant Bureau Chief for DNA
Programs, California Department of Justice*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ELIZABETH AIDA HASKELL and REGINALD ENTO, on behalf of themselves and others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN, JR., Attorney General of California; EVA STEINBERGER, Assistant Bureau Chief for DNA Programs, California Department of Justice; and MICHAEL HENNESSEY, Sheriff, San Francisco County,**<br><br>Defendants. | CV 09-4779 CRB<br><br>**SUPPLEMENTAL DECLARATION OF KENNETH C. KONZAK**<br><br>Date:         December 4, 2009<br>Time:        10:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge         The Honorable Charles R. Breyer<br><br>Action Filed:  October 7, 2009 |

I, Kenneth C. Konzak, declare under penalty of perjury as follows:

1. I am a Laboratory Director and the Technical Manager/Leader (a position identified under the FBI Quality Assurance Standards for Databasing Laboratories) for the State of

1

1  California DNA Data Bank Program (CAL-DNA) at the Jan Bashinski DNA Laboratory at 1001
2  West Cutting Blvd., Suite 110, Richmond, CA 94804.  I have been in this position for 9 years and
3  worked as a supervisor and manager of California Department of Justice DNA Programs for 20
4  years and as a forensic biologist for over 35 years.

5      2.    This further declaration is in response to several supplemental declarations made by
6  the plaintiffs in this case.

7      3.    The comparison to the situation in the United Kingdom repeatedly made by the
8  plaintiffs fails to account for some distinct differences between the National DNA Database
9  (NDNAD) in the United Kingdom and the California DNA database, not only in the underlying
10 law, but also in the selection of forensic loci used to distinguish samples.  For example, while the
11 United Kingdom initiated their offender database (NDNAD) with 6 STR loci using the "Second
12 Generation Multiplex or SGM ™, in no small part due to the loci and kits available at the time,
13 they later expanded the program to 10 loci with the "SGM Plus ™" kit in anticipation of a 5
14 million person database.  The US database, on the other hand, set a standard of using 13 loci for
15 the "core loci" required to enter an offender into the database when first switching to short
16 tandem repeat (STR) typing in 1998, recognizing from the beginning that more loci would be
17 required as the database grew.

18 Subsequent to the initial expansion of the database in the US, the AmpFlSTR®
19 Identifiler™ kit was released and is the current standard for the DNA typing of offenders at CAL-
20 DNA.  As a result, fully 1,039,162 offender profiles out of 1,405,835 total or 73.9% of the
21 offender profiles in CAL-DNA on 11/24/2009 had 15 polymorphic loci typed.  Over 1,385,920
22 offender profiles had 13 or more loci or 98.6% of the total present on that same date.  Likewise,
23 of the arrestee sample profiles, 105,969 of 128,745, or over 82% had all 15 loci.

24     4.    Likewise, in the forensic unknown index, over 20,287 profiles or 70% have 13 or
25 more loci, and 10,296 profiles or 35.6% even have 15 loci, out of a total of 28,953 forensic
26 unknown profiles in CAL-DNA.  As a result, 8,090 of the 10,868 hits or 74.4% of those reported
27 as of 11/24/2009 were matches made at 13 or more loci, and nearly 80% or 8656 matched at 11 or
28 more loci. For the 407 arrestee hits for which I have data, 269 or 66% of the arrestee hits had 15

locus matches and fully 406 or 99.8% had 14 or more loci. This makes it unlikely that a match involving 9 loci (particularly involving any of the arrestees in question), as represented by the Arizona data, would be reported (because the search considers all of these loci for elimination). Therefore any adventitious match, should one occur, would very likely be eliminated (and therefore not observed in CODIS) by comparison to the additional loci present.  Numerous articles have addressed this, including those attached to the Murphy Declaration in Exhibit B. These published articles by respected scientists do not endorse law professor Murphy's viewpoint.

      5.     Plaintiffs' Reply Brief at page 7 states that "(2) adding arrestees to the DNA databank increases the number of hits (it doesn't—and it slows down the upload of convicted felon and crime scene profiles) [sic]." As of 11/30/2009, CAL-DNA has reported 10,893 hits, of which 453 involved samples originally submitted from arrestees.  That already represents 4.1% of the hits ever made by CAL-DNA from about 9.1% of the offender database (134,280 arrestees in a total of 1,480294 offenders in CAL-DNA).  Given that 411 of the 453 arrestee hits were made in 2009, nearly 14% of the hits (of a 2009 total as of 11/30/2009 of 3,006 hits) were to arrestees. Moreover, the growing database is effective; with nearly 10,900 hits reported for about 29,000 forensic profiles, about 35% of profiles submitted have hit either an offender or another case that provides an investigative lead in the cases involved. The over 60% of the forensic unknown profiles remaining involve unsolved crimes and continue to await a match to a qualifying offender sample.  In addition, plaintiffs speculate that adding felony arrestee samples has slowed down the upload of convicted offender and crime scene profiles.  Plaintiffs are incorrect given CAL-DNA efficient large-scale processing of samples. Conversely the termination of the collection and processing of arrestee samples will require DOJ and California law enforcement to retool and reprogram equipment and retrain.  This would be an immense burden and very disruptive to our operations and would actually slow down the upload of convicted offender profiles.

      6.     Plaintiffs' expert, law professor Erin Murphy makes many general statements that are not informed with respect to California law enforcement and California's DNA laboratory.  For

example, in paragraph 32 of the Murphy Declaration, Murphy suggests that "considering the computerized nature of DNA records, it seems that such information [on the rates of convictions resulting from DNA database matches] ought to be easy to compile." In the first place the concept of a forensic lab evaluating the utility of a forensic technique based on the number of convictions obtained is counter to one of the very basic tenants of forensic science, i.e., to provide unbiased, reliable scientific evidence to courts and the legal process that determines guilt or innocence in our system of justice. Because DNA results are often so probative, the jump is often made to assume that no other evidence in the case matters. But, that is simply not true. Furthermore, even though information on matches may be part of national and California databases, there are few links to local law enforcement agency investigative information, not to mention district attorney's case status databases and the results of court proceedings, so that rates of conviction would not in fact be easy to compile as Murphy suggests.

7. Plaintiffs also suggest that arrestee sample analysis takes too long to be useful in an identification, such as to match a DNA profile to a profile listed on a John Doe warrant. While the average turn-around time for arrestee samples over the course of 2009 was as reported, 31 days, that average is dropping and DOJ can cite 32 cases already in 2009 where arrestee sample analysis was completed in 8-14 calendar days (one in only 5 days), which were then matched to past or on-going investigations, including: an offender typed in 13 days and matched to a profile from a 2008 homicide 17 days after the submission of the sample, another typed in 12 days and matched to a 2003 homicide 47 days after submission of the arrestee sample (still long before the arrestee's case would have been adjudicated), and 3 sexual assault cases where the arrestee was analyzed and matched within 9-18 days to the crime scene evidence from cases in 1995, 2003 and 2009 respectively.

8. Contrary to Murphy's observations in paragraph 38, since implementation of the DNA Act of 1994, any DNA analyst and their laboratory contributing DNA profiles to CODIS or that receives a federal grant must undergo external proficiency testing twice a year. In addition, independent of the requirements for DNA laboratories under state and federal law, ASCLD/LAB required each accredited laboratory and analyst to have an external proficiency test from an

4

approved provider each year. With the advent of Quality Assurance Standards, ASCLD/LAB also audits to the requirement of two external proficiency tests per year for DNA analysts. Compliance with these requirements is monitored both by the FBI CODIS Unit, the FBI Office of the Inspector General, and through external Quality Assurance Standards (QAS) audits conducted at least every two years. These external QAS audits must be submitted to and accepted by the National DNA Index System (NDIS) Audit Review Panel and the NDIS Custodian to ensure that every laboratory meets the QAS standards in full. Furthermore, every NDIS participating laboratory since October 30, 2006 has been required to be accredited by a nationally recognized accrediting body approved by NDIS, currently the ASCLD/LAB and FQS programs.  All California laboratories have been required to be accredited to enter data into CAL-DNA since the passage of the California DNA Data Bank Act of 1998.

The foregoing is true and correct and if called as a witness I could and would competently testify thereto

Executed this 1 of December, 2009, in Richmond, Contra Costa County, California.

KENNETH C. KONZAK

SF2009202559
20234360.doc